RECORD NO. 12-5363

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals
### For The District of Columbia Circuit

# ELECTRONIC FRONTIER FOUNDATION,

*Plaintiff – Appellant*,

**v.**

# UNITED STATES DEPARTMENT OF JUSTICE,

*Defendant – Appellee.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

————————

**BRIEF OF *AMICI CURIAE*
CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,
AMERICAN CIVIL LIBERTIES UNION, THE CONSTITUTION PROJECT,
OPENTHEGOVERNMENT.ORG, PROJECT ON GOVERNMENT OVERSIGHT,
THE BRENNAN CENTER FOR JUSTICE, AND THE WASHINGTON POST
IN SUPPORT OF APPELLANT**

————————

Anne L. Weismann
Melanie Sloan
CITIZENS FOR RESPONSIBILITY AND
 ETHICS IN WASHINGTON
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
(202) 408-5565

*Counsel for Amici Curiae*

THE LEX GROUP[DC] ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C.  20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), *amici curiae* Citizens for Responsibility and Ethics in Washington ("CREW"), the American Civil Liberties Union ("ACLU"), The Constitution Project ("TCP"), OpenTheGovernment.org, the Project on Government Oversight ("POGO"), The Brennan Center for Justice, and The Washington Post hereby submit their Certificate as to Parties, Rulings, and Related Cases as follows:

**A.     Parties and Amici.**  Plaintiff-appellant is the Electronic Frontier Foundation and defendant-appellee is the United States Department of Justice. CREW, ACLU, TCP, OpenTheGovernment.org, POGO, The Brennan Center for Justice and WP Company LLC (d/b/a The Washington Post) are participating as *amici curiae* in this Court.  No *amici* appeared before the district court.

**B.     Rulings Under Review.**  Under review are the order and memorandum opinion of the district court issued on September 21, 2012. *Electronic Frontier Foundation v. Department of Justice*, No. 1:11-cv-00939-RJL (D.D.C.) (Judge Richard J. Leon).  The district court opinion is available at 2012 U.S. Dist. LEXIS 135505.

**C.**     This case has not previously been before this Court or any other court. Counsel for *amici curiae* is aware of no other related cases pending before this Court or any other court within the meaning of D.C. Circuit Rule 28(a)(1)(c).

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, *amici curiae* ACLU, TCP, OpenTheGovernment.org, POGO, The Brennan Center, and The Washington Post submit this corporate disclosure statement.[1]

The ACLU does not have a parent company, and is not a publicly-held company with a 10 percent or greater ownership interest.  The ACLU is a nationwide, non-profit, non-partisan organization.

TCP does not have a parent company, and is not a publicly-held company with a 10 percent or greater ownership interest.  TCP is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue Code, whose mission is to promote constitutional safeguards.

OpenTheGovernment.org is a project of the Fund for Constitutional Government, which does not have a parent company, and is not a publicly-held company with a 10 percent or greater ownership interest.  The Fund for Constitutional Government is a non-profit, non-partisan corporation, organized under section 501(c)(3) of the Internal Revenue Code.

POGO does not have a parent company, and is not a publicly-held company with a 10 percent or greater ownership interest.  POGO is a non-profit, non-

---

[1] CREW already has filed a corporate disclosure statement with the Court.

partisan corporation, organized under section 501(c)(3) of the Internal Revenue
Code.

The Brennan Center for Justice does not have a parent Company, and is not
a publicly-held company with a 10 percent or greater ownership interest.

WP Company LLC (d/b/a The Washington Post) is a wholly-owned
subsidiary of the Washington Post Company, a publicly-held corporation.
Berkshire Hathaway, Inc., a publicly-held company, has a 10 percent or greater
ownership interest in The Washington Post Company.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...............i

CORPORATE DISCLOSURE STATEMENT ....................................... ii

TABLE OF CONTENTS.........................................................iv

TABLE OF AUTHORITIES ...................................................vi

STATEMENT OF *AMICI CURIAE* .......................................1

SUMMARY OF ARGUMENT ..................................................6

ARGUMENT ..................................................................8

    I.    OLC ISSUES DEFINITIVE INTERPRETATIONS OF LAW THAT BIND THE EXECUTIVE BRANCH OF GOVERNMENT ............................................................8

    II.    KEEPING OLC OPINIONS SECRET THREATENS OUR DEMOCRACY AND UNDERMINES THE RULE OF LAW..........14

    III.    AS A FINAL, DEFINITIVE STATEMENT OF LAW ISSUED IN FURTHERANCE OF THE ATTORNEY GENERAL'S STATUTORY AUTHORITY, THE OLC OPINION AT ISSUE IS NEITHER DELIBERATIVE NOR WITHIN THE SCOPE OF THE ATTORNEY-CLIENT PRIVILEGE ................................18

        A.    The OLC Opinion Is Not Deliberative ....................................20

        B.    The OLC Opinion Is Not The Product Of An Attorney-Client Relationship Between OLC And The FBI ....................22

    IV.    DISCLOSURE HERE WILL CAUSE NO HARM TO THE GOVERNMENT ............................................................26

CONCLUSION ................................................................................................27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bhd. of Locomotive Engineers v. Surface Transp. Bd.*,
   1997 U.S. Dist. LEXIS 11808 (D.D.C. July 30, 1997) .......................... 20-21

*\*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980)...............................................................20, 21

*Jordan v. U.S. Dep't of Justice*,
   591 F.2d 753 (D.C. Cir. 1978)......................................................................25

*Nat'l Council of La Raza v. Dep't of Justice*,
   411 F.3d 350 (2d Cir. 2005) .......................................................................27

*NLRB v. Sears Roebuck & Co.*,
   421 U.S. 132 (1974)...............................................................................21, 26

*Public Citizen v. Burke*,
   655 F. Supp. 318 (D.D.C. 1987)..................................................................13

*Smith v. Jackson*,
   246 U.S. 388 (1918)......................................................................................13

*Sterling Drug, Inc. v. FTC*,
   450 F.2d 698 (D.C. Cir. 1971)......................................................................20

*U.S. Bedding Co. v. United States*,
   55 Ct. Cl. 459 (1920) ...................................................................................13

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989)......................................................................................25

*\*Chief Authorities are Designated with an Asterisk*

## CONSTITUTIONAL PROVISION

U.S. Const. art. II, § 3 ..................................................................................14, 23

## STATUTES

5 U.S.C. § 552(a)(1)(D) ...............................................................................20

5 U.S.C. § 6301(2)(xi) ..................................................................................14

28 U.S.C. § 509 ...............................................................................................9

28 U.S.C. § 510 ...............................................................................................9

28 U.S.C. § 512 ...............................................................................................9

Judiciary Act of 1789, ch. 20, § 35, 1 Stat. 73 ..............................................9

## REGULATIONS

3 C.F.R. § 409 .................................................................................................9

28 C.F.R. § 0.25(a) ........................................................................................10

28 C.F.R. § 0.25(c) ........................................................................................10

## OTHER AUTHORITIES

22 Op. O.L.C. 239 (1998) .............................................................................13

36 Op. O.L.C. 1 (2011) .................................................................................14

1999 OLC LEXIS 1 (1999) ...........................................................................13

2000 OLC LEXIS 42 (2000) .........................................................................13

2002 OLC LEXIS 20 (2002) .........................................................................14

2003 OLC LEXIS 3 (2003) ...........................................................................14

2004 OLC LEXIS 23 (2004)................................................................13

Christopher Kutz, *The Repugnance of Secret Law*, *available at*
http://weblaw.usc.edu/centers/clp/papers/documents/Kutz.pdf .............................15

Dawn E. Johnsen, *Guidelines for the President's Legal Advisors*,
    81 Ind. L.J. 1345 (Fall 2005) .......................................................11

Exec. Order No. 12,146, § 1-501 ...........................................................9

Frank H. Easterbrook, *Privacy and the Optimal Extent of Disclosure Under
the Freedom of Information Act*,
    9 J. Legal Studies 774 (1980) .......................................................25

H.R. Rep. No. 1497, 89th Cong., 2d Sess. 7 (1966)........................................25, 26

*Hearings Before the Subcommittee on Administrative Practice and
Procedure of the Senate Judiciary Committee on S. 1160, S. 1336, S. 1758,
and S. 1879, Administrative Procedure Act*,
    89th Cong., 1st Sess. 143 (1966) ...................................................24

http://www.justice.gov/olc/olc-foia1.htm ...................................................12

http://www.justice.gov/olc/opinions/htm...................................................12

http://www.justice/gov/olc/memoranda-opinions.html .........................................12

Jack Goldsmith, *The Terror Presidency: Law and Judgment Inside the Bush
Administration* (2007) .......................................................................17

John O. McGinnis, *Models of the Opinion Function of the Attorney General:
A Normative, Descriptive, And Historical Prolegomenon*,
    15 Cardozo L. Rev. 375 (1993) ......................................................12

Letter from Sen. Ron Wyden, et al. to
President Barack Obama (Feb. 4, 2013), *available at*
http://www.wyden.senate.gov/download/letter-to-
president-obama-seeking-legal-opinions ...................................................16

Memorandum for Attorneys Of The Office,
U.S. Department of Justice, Office of Legal Counsel
*Re: Best Practices for OLC Legal Advice and Written Opinions*
(July 16, 2010), *available at* http://www.justice.gov/olc/pdf/olc-legal-advice-opinions.pdf ................................................................................10

Memorandum for Attorneys Of The Office,
U.S. Department of Justice, Office of Legal Counsel,
*Re: Best Practices for OLC Opinions* (May 16, 2005), *available at*
http://www.fas.org/irp/agency/doj/olc/best-practices.pdf .......................................10

Memorandum from Joshua B. Bolton,
Director, Office of Management and Budget, *Use of
Government Funds for Video News Releases to Heads of Departments and
Agencies* (Mar. 11, 2005), *available at*
http://m.whitehouse.gov/sites/default/files/omb/assets/omb/
memoranda/fy2005/m05-10.pdf ..............................................................................10

Note, *The Immunity-Conferring Power of the Office of Legal Counsel*,
    121 Harv. L. Rev. 2086 (2008)..................................................................9, 15

Office and Duties of Attorney General,
    6 Op. Att'y Gen. 326, 334 (1854) ..............................................................12

Principles to Guide the Office of Legal Counsel (Dec. 21, 2004),
*available at* http://www.acslaw.org/files/2004%20programs_
OLC%20principles_white%20paper.pdf...................................................................11

*Randolph D. Moss, *Recent Developments Federal Agency Focus:
The Department of Justice: Executive Branch Legal Interpretation:
A Perspective From the Office of Legal Counsel*,
    52 Admin. L. Rev. 1303 (Fall 2000) ..........................................11, 12, 14, 23

*Testimony of Dawn E. Johnsen before the
U.S. Senate Committee on the Judiciary Subcommittee on the Constitution,
Apr. 30, 2008, *available at*
http://www.judiciary.senate.gov/pdf/08-04-30
Johnsen_Dawn_testimony.pdf...........................................................14, 15, 16, 17

Testimony of Jack Landman Goldsmith before
U.S. Senate Committee on the Judiciary,
Oct. 2, 2007, *available at*
http://www.judiciary.senate.gov/hearings/testimony.cfm?id=
e655f9e2809e5476862f735da12ecadc&wit_id=
e655f9e2809e5476862f735da12ecadc-1-1 ........................................................ 11-12

Testimony of John P. Elwood before the
U.S. Senate Committee on the Judiciary,
Apr. 30, 2008, *available at*
http://www.judiciary.senate.gov/hearings/testimony.cfm?id=
e655f9e2809e5476862f735da139cdb5&wit_id=
e655f9e2809e5476862f735da139cdb5-1-3 ............................................................11

The Constitution Project, *Lift the Veil of Secrecy on Targeted Killing*,
Feb. 25, 2013, *available at*
http://constitutionproject.org/wp-content/uploads/2013/02/
Lift-the-Veil-of-Secrecy-on-Targeted-Killing.pdf .....................................................3

The Constitution Project, *Reining in Excessive Secrecy*,
July 16, 2009, *available at*
http://www.constitutionproject.org/manage/file/178.pdf ..........................................3

# STATEMENT OF *AMICI CURIAE*[1]

CREW is a non-profit, non-partisan corporation organized under section 501(c)(3) of the Internal Revenue Code.  Through a combined approach of research, advocacy, public education, and litigation, CREW seeks to protect the rights of citizens to be informed about the activities of government officials and to ensure the integrity of those officials.  Many of CREW's actions flow from the principles that transparency is a cornerstone of our democracy and government accountability is achieved through government transparency.

In support of its mission, CREW frequently files Freedom of Information Act ("FOIA") requests to access and make publicly available government documents that reflect on, or relate to, the integrity of government officials and their actions.  CREW has filed requests in the past with the U.S. Department of Justice ("DOJ") seeking legal opinions issued by DOJ's Office of Legal Counsel ("OLC").  CREW has sought these opinions because they explain the rationale for controversial decisions DOJ and other agencies have made, including decisions CREW has challenged in litigation.

---

[1] *Amici* confirm that no party's counsel authored this brief in whole or in part; no party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person, other than *amici*, their members, or their counsel, contributed money that was intended to fund preparing or submitting the brief.

1

CREW participates as an *amicus* in this case to ensure the FOIA's

exemptions are construed narrowly in light of the FOIA's purpose of eliminating

"secret law," *i.e.*, the working body of law explaining what an agency has done

and why. Sanctioning the continued secrecy of the OLC opinion at issue would

deprive the public of information on a subject critical to understanding the

government's rationale for adopting a controversial policy, and, by embracing

secrecy, would threaten the foundation of our democracy.

The ACLU is a nationwide, non-profit, non-partisan organization with more

than 500,000 members dedicated to the principles of liberty and equality embodied

in the Constitution and this nation's civil rights laws. The ACLU has found the

FOIA to be an invaluable tool in protecting civil liberties, and has participated in

numerous FOIA cases in this Court and other courts, both as direct counsel and as

*amicus curiae*.

TCP is a constitutional watchdog that brings together legal and policy

experts from across the political spectrum to promote and defend constitutional

safeguards. TCP's bipartisan Liberty and Security Committee makes policy

recommendations to protect both national security and civil liberties. Among

other issues, TCP has advocated for reforms to address the problem of over-

classification; an application of the FOIA that preserves First Amendment values

and promotes transparency and accountability; and public disclosure policies that

combat the problem of secret law.  Our constitutional system of checks and balances demands consideration and debate by an informed public.  That is not possible when the rules are hidden from public view.

As TCP's Liberty and Security Committee cautioned in its 2009 report on *Reining in Excessive Secrecy*:  "We have too often favored secrecy and lack of transparency at the expense of openness and accountability.  This pattern persists today, as excessive secrecy and over-classification remove vast amounts of information from public scrutiny, shielding misconduct and impeding oversight."  Similarly, the committee's February 2013 statement *Lift the Veil of Secrecy on Targeted Killing*, urged that "[t]he legal rules and standards under which our government operates should not be secret," and condemned "secret law" as a "deeply troubling and increasingly pervasive . . . problem that has plagued a succession of administrations."  The committee noted that with regard to the decisions of the Foreign Intelligence Surveillance Court ("FISC"):  "'Although the specific facts showing the justification for surveillance in particular cases may remain classified, the standards and analysis being applied by the FISC should be made public.'  This same analysis applies to OLC opinions and any other documents that set forth the legal standards under which the executive branch operates."  Based upon these reports and recommendations, TCP frequently files *amicus* briefs in litigation.

3

OpenTheGovernment.org is a Washington, D.C.-based non-partisan coalition of journalists, consumers, good- and limited-government groups, environmentalists, librarians, labor unions, and others whose mission is to increase government transparency to ensure that policies affecting our health, safety, security, and freedoms place the public good and well-being above the influence of special interests, and to promote democratic accountability. OpenTheGovernment.org takes a multi-prong approach to accomplishing its mission through public education, advocacy, and collaboration with government agencies to decrease secrecy.

Founded in 1981, POGO is a non-partisan independent watchdog that champions good government reforms. POGO investigates corruption, misconduct, and conflicts of interest in the federal government, and in doing so relies on the FOIA. POGO has found that in many instances, the refusal to disclose government records has to do with hiding corruption, intentional wrongdoing, or gross mismanagement by the government or its contractors. POGO strongly believes sunshine is the best disinfectant, and that we must empower citizens with information and tools to hold their government accountable. Concealing DOJ's OLC opinions on the government's interpretation of laws, regulations, and policies is against public policy and the presumption of openness on which the FOIA is based.

4

The Brennan Center for Justice at the New York University of Law ("Brennan Center") is a non-partisan public policy and law institute that focuses on fundamental issues of democracy and justice. The Brennan Center advocates for national security policies that respect constitutional values and the rule of law, with a particular focus on transparency and accountability. The Brennan Center is affiliated with New York University School of Law, but does not purport to present the school's institutional views, if any.

WP Company LLC (d/b/a The Washington Post) is the publisher of one of the nation's leading daily newspapers, as well as a website (www.washingtonpost.com) that reaches an average monthly audience of more than 20 million unique visitors. As a news organization based in the nation's capital, The Washington Post covers the activities of the federal government – particularly as they relate to law enforcement and national security – on a daily basis. Accordingly, The Washington Post has a strong interest in whether Office of Legal Counsel memoranda concerning the limits of the government's authority are available to the public. The Washington Post also has an interest in the administration and interpretation of the federal Freedom of Information Act, since its reporters frequently seek records under the Act as part of their newsgathering.

This brief is filed with the consent of counsel for all parties in the case.

## SUMMARY OF ARGUMENT

Secret laws historically have been recognized as a threat to the very roots of our democracy and the legitimacy of those who govern.  Citizens cannot know if the president is executing the laws faithfully, as the Constitution requires, if the laws the president executes are shielded from public view.  Secrecy in government undermines our constitutionally established system of checks and balances and the accountability that system brings.  The rule of law on which our country is built demands transparency.

Congress too has recognized secret law as anathema to our democratic system of government by enacting the Freedom of Information Act, a statute that mandates disclosure of federal records upon request.  Intended to let the public know what its government is up to, the FOIA provides certain limited exceptions to disclosure that must be construed very narrowly, consistent with the FOIA's overall purpose.  The statute also establishes a framework to prevent agencies from keeping secret the body of decisions, orders, and memoranda that govern how and why federal agencies act.

This case concerns the intersection of the FOIA and secret law.  At issue is an opinion prepared by the U.S. Department of Justice's Office of Legal Counsel ("OLC Opinion") setting forth the final, definitive interpretation of the executive branch on the scope of the FBI's authority under federal surveillance laws.

6

Notwithstanding its definitive character, DOJ insists the OLC Opinion must be kept secret, relying in part on Exemption 5 and its protection for material that falls within the deliberative process and attorney-client privileges.[2]

Plaintiff-appellant Electronic Frontier Foundation ("EFF") demonstrated below the legal and factual falsity of these claims. The district court disagreed, concluding the OLC Opinion is protected from compelled disclosure by FOIA Exemptions 1 and 5. The court, however, fundamentally misconstrued the role of OLC in issuing its Opinion and the very nature of the Opinion. Further, the court failed to properly take into account how the Opinion was used and disseminated within the executive branch in responding to an inquiry from DOJ's Office of the Inspector General ("OIG").

Not only is the district court decision wrong as a matter of fact and law, but accepting the district court's conclusions would run directly counter to the intent of the FOIA, and would facilitate the development of a growing body of secret law. The OLC Opinion at issue is just one of thousands of final opinions OLC has issued over the years on a wide range of issues, from the authority of the Bureau of Census to adjust population data for purposes other than apportionment, to the legality of using enhanced interrogation techniques on detainees. Those opinions

---

[2] DOJ also claims portions of the OLC Opinion are classified and therefore within the scope of Exemption 1. This brief does not address that argument, which, in any event, would not justify withholding the Opinion in its entirety.

also include analyses by OLC about the constitutionality of a president's refusal to enforce a statutory provision. Keeping these opinions secret essentially affords the president unreviewable discretion to ignore federal statutory requirements.

In issuing its opinions, OLC has relied on statutorily derived authority, delegated from the attorney general, to render conclusive and binding interpretations of law on behalf of the executive branch. Although OLC has made many of these opinions public, it has refused to release others, such as the one at issue here. As a result, there exists a body of unpublished OLC opinions to which the executive branch must adhere, but to which the public has no access. This case brings to the fore OLC's central role in developing and maintaining a body of secret law, and the corresponding harm to our constitutional democracy. Only by requiring the disclosure of the OLC Opinion at issue can this Court stop the escalating secrecy that threatens to undermine the proper functioning of our government.

## ARGUMENT

## I.     OLC ISSUES DEFINITIVE INTERPRETATIONS OF LAW THAT BIND THE EXECUTIVE BRANCH OF GOVERNMENT.

For many decades, OLC, exercising authority derived from the Judiciary Act of 1789, has provided definitive interpretations of law that bind the executive

8

branch of government.  The Judiciary Act of 1789 charged the attorney general

with, *inter alia*,

> giv[ing] his advice and opinion upon questions of law
> when required by the President of the United States, or
> when requested by the heads of any of the departments,
> touching any matters that may concern their departments
> . . .

Judiciary Act of 1789, ch. 20, § 35, 1 Stat. 73, 93.  The current codification of this

law similarly authorizes the attorney general to render opinions to heads of

executive departments "on questions of law arising in the administration of his

department."  28 U.S.C. § 512.  This same role is reflected in an executive order

directing agency heads to submit inter-agency disputes to the attorney general

"[w]henever two or more Executive agencies are unable to resolve a legal dispute

between them . . ."  Exec. Order No. 12,146, § 1-501, 3 C.F.R. § 409 (1979),

reprinted as amended in 28 U.S.C. § 509 (1988).

Initially, the attorney general delegated this advice-giving function to the

solicitor general, who prepared the legal opinions for the executive branch.  In

1950, OLC was given this responsibility pursuant to the attorney general's

delegation authority conferred by 28 U.S.C. § 510.[3]  Current DOJ regulations

define OLC's function as including "[p]reparing the formal opinions of the

---

[3] Note, *The Immunity-Conferring Power of the Office of Legal Counsel*, 121
Harv. L. Rev. 2086, 2087 (2008) (citation omitted).

Attorney General," 28 C.F.R. § 0.25(a), and "[r]endering opinions to the Attorney General and to the heads of the various organizational units of the Department on questions of law arising in the administration of the Department." *Id.* at § 0.25(c).

The opinions the attorney general, and later OLC, produced under this authority have been viewed as binding on the executive branch. Recent authority from the Office of Management and Budget emphasizes "it is OLC (subject to the authority of the Attorney General and the President) . . . that provides the controlling interpretations of law for the Executive Branch."[4] Similarly, OLC's own statements confirm its opinions bind the executive branch, notwithstanding its efforts in this case and others to pass these opinions off as deliberative, non-final documents. Internal memoranda OLC has issued to OLC attorneys describe OLC's function as providing "controlling advice,"[5] and its opinions as "controlling on questions of law within the Executive Branch."[6]

---

[4] Memorandum from Joshua B. Bolton, Director, Office of Management and Budget, *Use of Government Funds for Video News Releases to Heads of Departments and Agencies* (Mar. 11, 2005), *available at* http://m.whitehouse.gov/sites/default/files/omb/assets/omb/memoranda/fy2005/m05-10.pdf.

[5] Memorandum for Attorneys Of The Office, U.S. Department of Justice, Office of Legal Counsel, *Re: Best Practices for OLC Legal Advice and Written Opinions* (July 16, 2010), *available at* http://www.justice.gov/olc/pdf/olc-legal-advice-opinions.pdf.

[6] Memorandum for Attorneys Of The Office, U.S. Department of Justice, Office of Legal Counsel, *Re: Best Practices for OLC Opinions* (May 16, 2005), *available at* http://www.fas.org/irp/agency/doj/olc/best-practices.pdf. *See also*

Further, in congressional testimony before the Senate Judiciary Committee,
former senior OLC deputy John P. Elwood described OLC opinions as
"controlling within the Executive Branch on questions of law."[7]  Similarly, former
Assistant Attorney General Randolph H. Moss, while head of OLC, described
OLC's legal advice as "often embodied in formal written opinions" representing
"the legal position of the executive branch, unless overruled by the President or
the Attorney General."[8]  Likewise, former Assistant Attorney General Jack
Goldsmith, testifying before the Senate Committee on the Judiciary, characterized
OLC opinions as "with narrow exceptions, binding on all Executive branch actors,
subject to being overruled by the Attorney General or the President."[9]

---

Principles to Guide the Office of Legal Counsel (Dec. 21, 2004), *available at*
http://www.acslaw.org/files/2004%20programs_OLC%20principles_white%20pa
per.pdf.

[7] Testimony of John P. Elwood before the U.S. Senate Committee on the
Judiciary, Apr. 30, 2008, *available at* http://www.judiciary.senate.gov/hearings/
testimony.cfm?id=e655f9e2809e5476862f735da139cdb5&wit_id=e655f9e2809e5
476862f735da139cdb5-1-3.

[8] Randolph D. Moss, *Recent Developments Federal Agency Focus: The
Department of Justice: Executive Branch Legal Interpretation: A Perspective
From the Office of Legal Counsel*, 52 Admin. L. Rev. 1303, 1305 (Fall 2000).  As
former OLC official and current Indiana University of Law Professor Dawn E.
Johnsen has pointed out, it is a "rare event" that the attorney general or president
overrides OLC's legal interpretations.  Dawn E. Johnsen, *Guidelines for the
President's Legal Advisors*, 81 Ind. L.J. 1345 (Fall 2005).

[9] Testimony of Jack Landman Goldsmith before U.S. Senate Committee on
the Judiciary, Oct. 2, 2007, *available at* http://www.judiciary.senate.gov/hearings/
testimony.cfm?id=e655f9e2809e5476862f735da12ecadc&wit_id=e655f9e2809e5

The binding nature of the opinions OLC issues flows from its function and the nature of the authority it exercises. Viewed historically as performing a "quasi-judicial" function when providing opinions and advice, the attorney general (and through him OLC) does not act as "a counsel giving advice to the Government as his client, but a public officer, acting judicially, under all the solemn responsibilities of conscience and legal obligation."[10] Reinforcing this view, one commentator has described the collection of published and unpublished OLC opinions as "compris[ing] the largest body of official interpretation of the Constitution and statutes outside the volumes of the federal court reporters."[11]

---

476862f735da12ecadc-1-1. *See also* John O. McGinnis, *Models of the Opinion Function of the Attorney General: A Normative, Descriptive, And Historical Prolegomenon*, 15 Cardozo L. Rev. 375, 428 (1993) (OLC "act[s] more like a court than a private outside counsel.").

[10] Moss, 52 Admin. L. Rev. at 1309 (quoting former Attorney General Caleb Cushing, citing Office and Duties of Attorney General, 6 Op. Att'y Gen. 326, 334 (1854)). While Mr. Moss also lays out the counter-arguments for why OLC is more than the "neutral expositor" advanced by Attorney General Cushing, *id.* at 1315-1328, he concludes this view is merely "incomplete" because it fails to take into account the responsibility of OLC lawyers to consider, in addition to judicial precedent, "the tradition of the executive branch legal interpretation and the substantial body of non-judicial precedent that informs that process." *Id.* at 1330.

[11] McGinnis, 15 Cardozo L. Rev. at 376. There is no publicly available figure of the exact number of opinions OLC has issued. According to its website, opinions OLC has deemed appropriate for publication just for the years 1977-2000 are found in 24 volumes of published opinions. http://www.justice.gov/olc/ opinions/htm. Additional opinions are found in OLC's on-line electronic reading room, http://www.justice.gov/olc/olc-foia1.htm, as well as through its on-line opinions page, http://www.justice.gov/olc/memoranda-opinions.html. OLC has

12

Courts, too, have recognized the binding nature of OLC opinions, at least as to the executive branch, "until withdrawn by the Attorney General or overruled by the courts." *Public Citizen v. Burke*, 655 F. Supp. 318, 321-22n.5 (D.D.C. 1987), citing *Smith v. Jackson*, 246 U.S. 388, 390-91 (1918). *See also U.S. Bedding Co. v. United States*, 55 Ct. Cl. 459, 460-61 (1920). While these cases address the binding effect of attorney general opinions, they apply equally to OLC opinions given that OLC is exercising the delegated authority of the attorney general.

OLC opinions cover a wide range of topics, from the obscure to the notorious. For example, an OLC opinion dated April 5, 1999, addressed the applicability of the Trade Secrets Act to the intra-governmental exchange of regulatory information, 1999 OLC LEXIS 1 (1999), while an August 18, 2000 opinion answers the question whether a former president may be indicted and tried for the same offenses for which he was impeached by the House and acquitted by the Senate, 2000 OLC LEXIS 42 (2000). OLC has opined definitively on the deployment of United States armed forces into Haiti, 2004 OLC LEXIS 23 (2004), on the authority of the Bureau of Census to adjust population data for purposes other than apportionment, 22 Op. O.L.C. 239 (1998), and on what actions the president can take unilaterally and without congressional consent towards

refused to make public an unknown volume of opinions, and its website collection post-dates 1976.

13

centralizing border control policy, 2002 OLC LEXIS 20 (2002). Further issues OLC has resolved for the executive branch include the authority to employ White House office personnel exempt from the Annual and Sick Leave Act under 5 U.S.C. § 6301(2)(xi) during an appropriations lapse, 36 Op. O.L.C. 1 (2011), and limitations on the detention authority of the Immigration and Naturalization Service, 2003 OLC LEXIS 3 (2003). While these OLC opinions vary widely in their scope and topic, they all share at least one common denominator: they are binding on the executive branch.

## II.   KEEPING OLC OPINIONS SECRET THREATENS OUR DEMOCRACY AND UNDERMINES THE RULE OF LAW.

By serving as definitive binding statements of law, OLC opinions advance several important executive branch goals. First, they fulfill the legal obligation of the president and, through him, the attorney general and OLC, to "preserve, protect and defend the Constitution" and "take Care that the Laws be faithfully executed."[12] Second, they "promote uniformity and stability in executive branch legal interpretations."[13] And third, OLC opinions provide protection for executive

---

[12] U.S. Const. art. II, § 3. *See also* Testimony of Dawn E. Johnsen before the U.S. Senate Committee on the Judiciary Subcommittee on the Constitution, Apr. 30, 2008, available at http://www.judiciary.senate.gov/pdf/08-04-30Johnsen_Dawn_testimony.pdf.

[13] Moss, 52 Admin. L. Rev. at 1319.

branch officials who reasonably can rely on them and therefore not face prosecution if their actions are subsequently deemed illegal.[14]

Significantly, by establishing the definitive position of the executive branch on a wide range of issues, OLC opinions have serious consequences for the rule of law. In some cases, OLC opinions actually may amend or alter the contours of laws and effectively "make new law, regardless of congressional intent."[15] University of California Berkeley School of Law Professor Christopher Kutz has described the particular dangers raised by OLC opinions that are "at variance with statutory authority" on issues like "the forms of interrogation or domestic surveillance." In such situations, the OLC opinions "work a change in the underlying law."[16] As a result, where they "establish principles changing the legal position of the United States going forward," OLC's opinions "determine future legal outcomes generally, thus going beyond simple executive action."[17]

---

[14] Testimony of Dawn. E. Johnsen, *supra*.

[15] Christopher Kutz, *The Repugnance of Secret Law* 5, *available at* http://weblaw.usc.edu/centers/clp/papers/documents/Kutz.pdf.

[16] *Id.* at 23-24.

[17] *Id.* at 24. *See also* Note, 121 Harv. L. Rev. at 2088 ("When an OLC opinion sanctions a course of conduct, it not only advises officials on potential legal exposure, but also shapes how the Department of Justice enforces the law as a practical matter.").

Given these effects, keeping OLC opinions secret poses an unacceptable risk of the executive branch escaping any accountability for its legal views. Citizens cannot know if the president is executing the laws faithfully, as the Constitution requires, if the laws the president executes are shielded from public view. Such secrecy in government threatens our constitutionally established system of checks and balances and the accountability that system brings.

This risk is especially acute when an OLC opinion concludes the executive branch need not comply with a federal statute, a conclusion that represents the executive acting at the apex of its power, subject to no check or balance from the judiciary. In those situations, not only are the courts deprived of their oversight role, but Congress also is deprived "of an opportunity to respond with clarifying legislation," addressing the specific law at issue and, more generally, the ability to legislate effectively in the absence of knowing how the executive branch interprets existing laws.[18]  In the end, this practice of secrecy threatens the rule of law and

---

[18] Testimony of Dawn. E. Johnsen, *supra*.  The importance of congressional and public access to secret OLC opinions was highlighted in a recent letter to President Barack Obama from 10 senators seeking access to the OLC opinions authorizing the killing of Americans abroad in the context of counterterrorism operations.  Letter from Sen. Ron Wyden, et al. to President Barack Obama (Feb. 4, 2013), *available at* http://www.wyden.senate.gov/download/letter-to-president-obama-seeking-legal-opinions.  As the senators explained,

> It is vitally important . . . for Congress and the American public to have a full understanding of how the executive branch interprets the limits and boundaries of this authority, so that Congress and the

16

the tripartite system of government our Constitution mandates, which only works

when "all branches of government and the American people know what the law

is."[19]

Moreover, keeping OLC opinions secret even after agencies have relied on

their conclusions and reasoning to formulate and implement policies denies the

public crucial information about the rationale behind government actions, and

impedes accountability for both OLC and the agencies receiving the advice.  The

so-called OLC "torture memos" illustrate this point vividly.  Once allegations of

harsh interrogation techniques came to light, questions were raised about how use

of these techniques could be squared with U.S. laws and international treaty

obligations.  The eventual disclosure of the "torture memos" revealed them to rest

on "cursory and one-sided legal arguments."[20]  As our history with these torture

memos also demonstrates, secrecy encourages government leaking, which often

---

public can decide whether this authority has been properly defined,
and whether the President's power to deliberately kill American
citizens is subject to appropriate limitations and safeguards.

*Id.*

[19] Testimony of Dawn. E. Johnsen, *supra*.

[20] Jack Goldsmith, *The Terror Presidency: Law and Judgment Inside the Bush Administration* 149 (2007).

17

results in a distorted and out-of-context picture that is no substitute for the full

policy rationale.

Further, keeping OLC opinions secret limits the ability of litigants to

challenge executive action in court.  For example, the government can decide it

will not rely on evidence gathered through electronic surveillance, and so ensure

the practice of conducting electronic surveillance is not judicially reviewable.

Keeping secret the rationale for the government's use of electronic surveillance, as

expressed in an OLC opinion, ensures neither the courts, Congress, nor the public

has any opportunity to even review the practice, much less weigh in on its legality.

III.  **AS A FINAL, DEFINITIVE STATEMENT OF LAW ISSUED IN
FURTHERANCE OF THE ATTORNEY GENERAL'S STATUTORY
AUTHORITY, THE OLC OPINION AT ISSUE IS NEITHER
DELIBERATIVE NOR WITHIN THE SCOPE OF THE ATTORNEY-
CLIENT PRIVILEGE.**

The 11-page OLC Opinion at issue bears all the hallmarks of a final,

definitive interpretation of law by OLC.  Issued at the request of the FBI, it sets

forth the executive's position on the legality of the FBI's practice of obtaining

communications records from service providers without valid legal process or a

qualifying emergency.  *See* Complaint, ¶ 5 (ECF Dkt. No. 1).  The FBI sought the

OLC Opinion while deciding how to respond to an inquiry from DOJ's OIG,

which was finalizing its report on the FBI's misuse of National Security Letters as

a method to request immediate disclosure of telephone records.  *Id.* at ¶¶ 5-6.

18

OLC clearly issued the opinion at issue as part of its statutorily derived authority to interpret the law upon request from an agency or agency component. There is nothing in the record or the circumstances surrounding its creation to suggest OLC's views on this matter were anything less than final or definitive, or that the FBI – or any other federal agency – was free to ignore OLC's conclusions. Indeed, OLC's own description of the process and the product it yielded reveal the OLC Opinion addresses not only "the proper interpretation of the law with respect to information-gathering procedures employed by the FBI," but those employed by "other Executive Branch agencies" as well.  Declaration of Paul P. Colborn, ¶ 14 (ECF Dkt. No. 11-4) ("Colborn Decl.") .

Despite its final, definitive nature, OLC has withheld the Opinion in its entirety, insisting secrecy is mandated by its classified nature and is necessary to preserve DOJ's deliberative processes and the "special relationship of trust it has with the FBI." *Id.*  But in this context, where the OLC Opinion represents the definitive word from the executive branch on the legality of a very controversial practice, the harm from keeping the Opinion secret far outweighs the interests DOJ seeks to protect, which in any event do not fall within the scope of FOIA Exemption 5.

## A.    The OLC Opinion Is Not Deliberative.

In interpreting FOIA Exemption 5, courts have drawn a bright line between documents that reflect the deliberations of an agency and those that reflect a final agency decision.  The need for this bright line in the context of decisional documents is especially acute to avoid "secret law."  The D.C. Circuit summarized its opinions on this issue as follows:

> [a] strong theme of our opinions has been that an agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and its dealings with the public . . . The theme was sound as early as 1971 when the court emphatically stated that agencies would be required to disclose 'orders and interpretations which it actually applies to cases before it,' in order to prevent the development of 'secret law.'

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980) (citation omitted).  The Court further described "binding agency opinions and interpretations" as "the law itself" that "'should be made available to the public . . . to prevent the development of secret law.'"  *Id.* at 868, quoting *Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 708 (D.C. Cir. 1971).[21]

As a necessary consequence, this "'working law' of the agency" is "'outside the protection of Exemption 5.'"  *Bhd. of Locomotive Engineers v. Surface Transp.*

---

[21] This view also is consistent with the FOIA, which requires agencies to make publicly available "substantive rules of general applicability . . . statements of general policy, or interpretations of general applicability formulated and adopted by the agency."  5 U.S.C. § 552(a)(1)(D).

*Bd.*, 1997 U.S. Dist. LEXIS 11808, *12-13 (D.D.C. July 30, 1997) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152-53 (1975)).  Applying this precedent here, the OLC Opinion bears "little resemblance to the types of documents intended to be protected under the deliberative process privilege." *Coastal States Gas Corp.*, 617 F.2d at 868.  It is "not advice to a superior," but a final, definitive interpretation of law.  *Id.*  Nor is it a "suggested disposition[] of a case" that is but "one step of an established adjudicatory process, which would result in a formal opinion."  *Id.*  Instead, the OLC Opinion provides OLC's "interpretation of the law with respect to information-gathering procedures employed by the FBI and other Executive Branch agencies."  Colborn Decl. at ¶ 14.  Accordingly, OLC cannot hide "behind a veil of privilege" to protect this document under Exemption 5. *Coastal States Gas Corp.*, 617 F.2d at 867.

In arguing to the contrary, DOJ has attempted to differentiate between OLC's authority to interpret the law – expressed here in the OLC Opinion – and OLC's lack of authority to dictate to an agency how it must act in view of OLC's legal advice, which OLC terms "policy decisions."  Colborn Decl. at ¶ 2.  But while OLC may not have authority to direct a particular course of action by an agency to comply with OLC's interpretation of the law, a so-called "policy decision,"  OLC unquestionably has the authority to make final, definitive interpretations of law, as it did here when it issued the OLC Opinion.  Although

21

the FBI has the power to determine which particular course of action it may take in compliance with OLC's definitive interpretation of the scope of the FBI's authority under federal surveillance laws, OLC's Opinion embodies a final interpretation of law.  As a necessary consequence, the OLC Opinion is not within the scope of the deliberative process privilege and Exemption 5.

DOJ also has suggested that because the FBI requested the OLC Opinion as part of its "re-evaluation of sensitive techniques used in national security and law enforcement investigations" in responding to an inquiry from the OIG, the OLC Opinion is both pre-decisional and deliberative.  Colborn Decl. at ¶ 13.  Again, however, DOJ confuses the policy and deliberative processes of the FBI – which are not at issue – with the separate and distinct process of OLC, exercising its own statutory authority, in issuing final, definitive interpretations of law.  Regardless of how the FBI uses the OLC Opinion as part of its own deliberative process, that Opinion represents a final, non-deliberative product of OLC.

**B.    The OLC Opinion Is Not The Product Of An Attorney-Client Relationship Between OLC And The FBI.**

The district court below did not rule on whether the OLC Opinion is protected by the attorney-client privilege, but all indications are that it is not. Quite apart from any waiver that occurred here when the FBI shared the OLC

22

Opinion with the OIG, the Opinion is not the product of a privileged, attorney-client relationship between OLC and the FBI.

OLC was fulfilling the role, assigned by statute to the attorney general, of rendering definitive legal advice on behalf of the executive branch. OLC's "client" was the executive branch, and in rendering its opinion OLC was serving the interests of the United States, not just those of the FBI. This conclusion is underscored by the Constitution's directive that the president "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. Because this function requires the attorney general, and through him OLC, to be as objective and accurate as possible, OLC cannot be swayed by the more parochial concerns that animate the traditional attorney-client relationship.[22]

Nevertheless, OLC claims to have a "special relationship" with the FBI and the other affected agencies. Colborn Decl. at ¶ 14. But this begs the question, as OLC fails to explain the nature of that "special relationship," a term that otherwise has no specific meaning. Indeed, it is difficult to see what is so "special" about a relationship OLC claims to have with a variety of agencies. *See id.* More telling is OLC's concession it was acting as "legal counsel to the Executive Branch," *id.*, a description consonant with its mission of providing the executive branch with definitive, binding interpretations of law.

---

[22]*See* Moss, 52 Admin. L. Rev. at 1312.

The simple fact is that OLC was not formulating legal advice for a specific client, but instead acting in a quasi-judicial role to provide the official position of the executive branch with respect to the scope of the FBI's authority under federal surveillance laws.  As such, it did not form a privileged relationship with the FBI protected by Exemption 5.  Any other conclusion distorts the nature of the relationship between OLC and the FBI and the authority OLC exercises.

Recognizing a protected attorney-client relationship any time OLC provides an interpretation of a statute's meaning, whether or not based on any confidential information received from the recipient agency, would blanket virtually all of OLC's work in secrecy.  This would yield a result directly at odds with Congress' purpose in enacting the FOIA:  the elimination of secret law.

Before the FOIA was passed in 1966, many agencies developed bodies of law that governed their treatment of the public, but were kept secret.  According to a leading administrative law authority, prior to the FOIA "nearly all" agencies had "in some degree, systems of secret law."  *Hearings Before the Subcommittee on Administrative Practice and Procedure of the Senate Judiciary Committee on S. 1160, S. 1336, S. 1758, and S. 1879, Administrative Procedure Act*, 89th Cong., 1st Sess. 143 (1966) (statement of Kenneth Culp Davis).  DOJ's Immigration Service, for example, granted public access to only 58 of the approximately 700,000 orders and decisions it issued in 1963, even though many of those

24

opinions served as agency precedent.  *Id.* at 144, 187-88.  The State Department

similarly kept secret in its entirety a "large body of law" of its decisions on visa

application appeals, including many written opinions interpreting law or policy.

*Id.* at 145.

      The existence of these bodies of secret laws and the problems they caused

critically motivated Congress in drafting the FOIA.  The House Committee on

Government Operations characterized agency policy statements and interpretations

as "the end product of Federal administration" with "the force and effect of law in

most cases," but noted that "under the present statute these Federal agency

decisions have been kept secret from the members of the public affected by the

decisions."  H.R. Rep. No. 1497, 89th Cong., 2d Sess. 7 (1966).

      In response, Congress passed the FOIA to eliminate secret law.  *See*, *e.g.*,

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749,

796 n.20 (1989) (the FOIA's "primary objective is the elimination of 'secret law'")

(quoting Frank H. Easterbrook, *Privacy and the Optimal Extent of Disclosure*

*Under the Freedom of Information Act*, 9 J. Legal Studies 774, 777 (1980));

*Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 781 (D.C. Cir. 1978) (en banc)

(same).  To accomplish this goal, Congress included in the statute affirmative

disclosure provisions requiring agencies to make available to the public the

countless orders, opinions, statements, and instructions federal agencies issue.

H.R. Rep. No. 1497 at 7.

The district court's conclusions here cannot be reconciled with the goals and language of the FOIA.  "Exemption 5, properly construed, calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy."  *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 153 (1974).  Under a "proper" construction of Exemption 5 here, the OLC Opinion cannot be protected from public disclosure through either the deliberative process or attorney-client privilege.

## IV.    DISCLOSURE HERE WILL CAUSE NO HARM TO THE GOVERNMENT.

Finally, while the compelling public interest in disclosure of the OLC Opinion is manifest, harm to the government from disclosure is virtually non-existent.[23]  DOJ pays lip service to the kind of harm generally asserted to flow from the disclosure of deliberative documents:  undermining the deliberative process and chilling "the candid and frank communications necessary for effective governmental decision-making."  Colborn Decl. at ¶ 13.  This claim, however, lacks any basis in fact or law.

---

[23] In this regard, *amici* note that to the extent the OLC Opinion contains properly classified information, it may qualify for protection from disclosure under FOIA Exemption 1.  We express no position whether such material was, in fact, properly classified here.

In reaching the decision embodied in the Opinion at issue, OLC was carrying out the responsibility of the attorney general to give advice and opinions on behalf of the executive branch. Because OLC was serving a statutorily imposed purpose, there is no reasonable expectation it will be chilled in exercising that function merely by the disclosure of the Opinion at issue here.

Moreover, OLC already has disclosed thousands of its opinions, but can point to no instance where any of these releases inhibited full and frank discussions, interfered with OLC's ability to carry out its mission, or otherwise impeded any attorney-client relationship OLC enjoys. Even when public disclosure has been ordered over the government's strong objection, there is no evidence those disclosures caused any harm to the government. *See*, *e.g.*, *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 361 (2d Cir. 2005). At bottom, DOJ's claimed harm is nothing more than the mantra it invokes every time its reliance on Exemption 5 is challenged in court, a mantra that here is not backed up with facts or reality.

## CONCLUSION

For the foregoing reasons and those set forth in Plaintiff-appellant's brief, the Court should reverse the ruling of the district court and order the disclosure of the OLC Opinion.

Respectfully submitted,

/s/ Anne L. Weismann
Anne L. Weismann
Melanie Sloan
Citizens for Responsibility and Ethics
in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
(202) 408-5565

Counsel for *Amici Curiae*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*6,337*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Corel WordPerfect 1*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>March 22, 2013</u>           <u>/s/ Anne L. Weismann</u>
                                       *Counsel for Amici Curiae*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 22nd day of March, 2013, I caused this Brief of

*Amici Curiae* to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

> David L. Sobel
> LAW OFFICES OF DAVID L. SOBEL
> 1818 N Street, NW, Suite 410
> Washington, DC  20036
> (202) 246-6180
>
> *Counsel for Appellant*
>
> Daniel Tenny
> Michael S. Raab
> U.S. DEPARTMENT OF JUSTICE
> 950 Pennsylvania Avenue, NW, Room 7215
> Washington, DC  20530
> (202) 514-2000
>
> *Counsel for Appellee*

I further certify that on this 22nd day of March, 2013, I caused the required

copies of the Brief of *Amici Curiae* to be hand filed with the Clerk of the Court.

> /s/ Anne L. Weismann
> *Counsel for Amici Curiae*