[ORAL ARGUMENT NOT SCHEDULED]

No. 12-5363

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

ELECTRONIC FRONTIER FOUNDATION,

Plaintiff-Appellant,

v.

U.S. DEPARTMENT OF JUSTICE,

Defendant-Appellee.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

————————————

BRIEF FOR APPELLEE

————————————

STUART F. DELERY
  *Acting Assistant Attorney General*

RONALD C. MACHEN JR.
  *United States Attorney*

MICHAEL S. RAAB
DANIEL TENNY
  *(202) 514-1838*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C. 20530*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.  Parties and Amici

The appellant in this Court, who was plaintiff in the district court, is the Electronic Frontier Foundation.  The United States Department of Justice was the defendant in the district court and is the appellee in this Court.  There were no amici in the district court.  Citizens for Responsibility and Ethics in Washington, the American Civil Liberties Union, the Constitution Project, OpenTheGovernment.org, Project on Government Oversight, the Brennan Center for Justice, and the Washington Post have filed a joint amicus brief in this Court in support of appellant.

### B.  Rulings Under Review

The ruling under review is the memorandum opinion and accompanying order issued on September 21, 2012, by Judge Richard J. Leon, docket numbers 22 and 23.  The district court's opinion is reported at 892 F. Supp. 2d 95.

### C. Related Cases

This matter has not previously been before this Court or any other court.  We are unaware of any related cases pending in this Court or any other court.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

GLOSSARY

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE ISSUES ............................................................................2

PERTINENT STATUTES AND REGULATIONS................................................2

STATEMENT OF THE CASE................................................................................2

STATEMENT OF FACTS.......................................................................................3

SUMMARY OF ARGUMENT ..............................................................................9

STANDARD OF REVIEW ...................................................................................12

ARGUMENT..........................................................................................................13

I.      The OLC Opinion was properly withheld under Exemption 5...........13

     A.      The OLC Opinion is predecisional and deliberative,
          and its disclosure would inhibit discussions essential to
          formulating agency policies..............................................................13

     B.      The OLC Opinion does not constitute the
          "working law" of any agency.............................................................20

     C.      The FBI has not expressly adopted the OLC Opinion................34

D.      The district court appropriately determined that no
        portion of the document was segregable and did not
        abuse its discretion by not reviewing the document
        *in camera* ............................................................................................39

II.     The district court properly concluded that portions of
        the OLC Opinion are protected under Exemption 1 .............................43

CONCLUSION ....................................................................................................51

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A)(7)

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page**

*Access Reports v. Dep't of Justice,*
  926 F.2d 1192 (D.C. Cir. 1991) ........................................................36

*ACLU v. U.S. Dep't of Defense,*
  628 F.3d 612 (D.C. Cir. 2011) .........................................................12

* *Afshar v. Dep't of State,*
  702 F.2d 1125 (D.C. Cir. 1983) .......................................21, 22, 24, 34

*Allen v. CIA,*
  636 F.2d 1287 (D.C. Cir. 1980) ........................................................45

*Armstrong v. Exec. Office of the President,*
  97 F.3d 575 (D.C. Cir. 1996) ....................................................42, 43

*Brennan Ctr. for Justice v. Dep't of Justice,*
  697 F.3d 184 (2d Cir. 2012) .............................................................38

*Brinton v. Dep't of State,*
  636 F.2d 600 (D.C. Cir. 1980) ........................................................32

*Carter v. U.S. Dep't of Commerce,*
  830 F.2d 388 (D.C. Cir. 1987) ........................................................48

*Coastal States Gas Corp. v. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) ...................................................14, 29

*Common Cause v. IRS,*
  646 F.2d 656 (D.C. Cir. 1981) ........................................................36

*CREW v. Office of Admin.,*
  249 F.R.D. 1 (D.D.C. 2008) ...........................................................33

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*Ctr. for Nat'l Security Studies v. Dep't of Justice*,
    331 F.3d 918 (D.C. Cir. 2003) ...........................................................46

*Cuneo v. Schlesinger*,
    484 F.2d 1086 (D.C. Cir. 1973) .......................................................21

*Elec. Privacy Info. Ctr. v. Dep't of Justice*,
    584 F. Supp. 2d 65 (D.D.C. 2008) ...................................................33

*Federal Open Market Comm. of the Fed. Reserve System v. Merrill*,
    443 U.S. 340 (1979) .........................................................................22

*Hayden v. Nat'l Sec. Agency*,
    608 F.2d 1381 (D.C. Cir. 1979) .......................................................48

*Ingle v. Dep't of Justice*,
    698 F.2d 259 (6th Cir. 1983) ...........................................................49

*Johnson v. Exec. Office for U.S. Attorneys*,
    310 F.3d 771 (D.C. Cir. 2002) ...................................................12, 42

*Jones v. FBI*,
    41 F.3d 238 (6th Cir. 1994) .............................................................49

*Judicial Watch, Inc. v. Dep't of Energy*,
    412 F.3d 125 (D.C. Cir. 2005) ...................................................13, 14

* *Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ...................................................44, 46

*Loving v. Dep't of Defense*,
    550 F.3d 32 (D.C. Cir. 2008) ...........................................................42

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007) .......................................................40

iv

*Murphy v. Dep't of Army,*
    613 F.2d 1151 (D.C. Cir. 1979) ............................................................31, 32, 37

*National Council of La Raza v. Dep't of Justice,*
    411 F.3d 350 (2d Cir. 2005) ..................................................................32, 33, 38

* *NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ...................................... 14, 15, 20, 22, 31, 33, 34

*Peltier v. FBI,*
    563 F.3d 754 (8th Cir. 2009) ................................................................49

*Public Citizen, Inc. v. Office of Mgmt. & Budget,*
    598 F.3d 865 (D.C. Cir. 2010) ............................................................30

*Renegotiation Board v. Grumman Aircraft Engineering Corp.,*
    421 U.S. 168 (1975) ............................................................................36

*Rockwell Int'l Corp. v. U.S. Dep't of Justice,*
    235 F.3d 598 (D.C. Cir. 2001) ............................................................37

*Rugiero v. U.S. Dep't of Justice,*
    257 F.3d 534 (6th Cir. 2001) ..............................................................49

*Schlefer v. United States,*
    702 F.2d 233 (D.C. Cir. 1983) ............................................................29

*Sterling Drug, Inc. v. FTC,*
    450 F.2d 698 (D.C. Cir. 1971) .........................................................16, 17, 29, 30

*Tax Analysts v. IRS,*
    117 F.3d 607 (D.C. Cir. 1997) ............................................................30

*Tax Analysts v. IRS,*
    294 F.3d 71 (D.C. Cir. 2002) ..............................................................30

*Taxation with Representation Fund v. IRS*,
  646 F.2d 666 (D.C. Cir. 1981) ........................................30, 31, 38

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
  489 U.S. 749 (1989) ........................................................21

*Wolfe v. Dep't of Health & Human Servs.*,
  839 F.2d 768 (D.C. Cir. 1988) ..........................14, 15, 41

**Constitution:**

U.S. Const., Art. II, § 3 ........................................................19

**Statutes:**

5 U.S.C. § 552 ................................................................7

5 U.S.C. § 552(a)(2) ....................................................23, 24

* 5 U.S.C. § 552(b)(1) ................................................2, 3, 44

* 5 U.S.C. § 552(b)(5) ....................................................3, 8

5 U.S.C. § 552(d) ...........................................................37

5 U.S.C. § 1002 (repealed 1966) ....................................22, 23

12 U.S.C. § 3414(a)(5)(A) ..................................................4

15 U.S.C. § 1681u(a)–(b) ..................................................4

18 U.S.C. § 2709 ...........................................................4

28 U.S.C. §§ 511-513 ......................................................3

28 U.S.C. § 512 ...........................................................25

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1331 ..............................................................................1

50 U.S.C. § 436(a)(1) ......................................................................4

Pub. L. No. 109-177, 120 Stat. 192 (2006) ..................................4

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ..............................................................1

**Regulations:**

28 C.F.R. § 0.25(a) ..........................................................................3

**Legislative Materials:**

H.R. Rep. No. 79-1980 (1946) .....................................................23

H.R. Rep. No. 89-1497 (1966) ....................................14, 23, 24

*Hearings Before the Subcommittee on Administrative Practice and
  Procedure of the Senate Judiciary Committee, Administrative
  Procedure Act*, 89th Cong., 1st Sess. (1965) ...........................24

S. Rep. No. 89-813 (1965) ..............................................14, 24

**Other Authorities:**

Army Regulation 10-5 ..................................................................32

Davis, *The Information Act: A Preliminary Analysis*,
  34 U. Chi. L. Rev. 761 (1967) ..................................................22

Dep't of Justice, OIG, *A Review of the Federal Bureau of Investigation's Use of National Security Letters* (2007), *available at* http://www.justice.gov/oig/special/s0703b/final.pdf............................5

Dep't of Justice, OIG, *A Review of the Federal Bureau of Investigation's Use of Exigent Letters and Other Informal Requests for Telephone Records* (2010), *available at* http://www.justice.gov/oig/special/s1001r.pdf........................5, 6, 7, 15, 27, 37, 50

Easterbrook, *Privacy and the Optimal Extent of Disclosure Under the Freedom of Information Act,* 9 J. Legal Stud. 775 (1980) ............................21

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| FBI | Federal Bureau of Investigation |
| FOIA | Freedom of Information Act |
| OIG | Office of Inspector General |
| OLC | Office of Legal Counsel |
| OMB | Office of Management and Budget |

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

No. 12-5363

———————

ELECTRONIC FRONTIER FOUNDATION,

Plaintiff-Appellant,

v.

U.S. DEPARTMENT OF JUSTICE,

Defendant-Appellee.

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————

BRIEF FOR APPELLEE

———————

## JURISDICTIONAL STATEMENT

Plaintiff invoked the district court's jurisdiction under 28 U.S.C.

§ 1331.  The district court entered summary judgment for the government

on September 21, 2012.  Plaintiff timely appealed on November 15, 2012.

*See* Fed. R. App. P. 4(a)(1)(B).  This Court has jurisdiction under 28 U.S.C.

§ 1291.

**STATEMENT OF THE ISSUES**

1.  Whether the deliberative process privilege protects the legal advice of the Office of Legal Counsel that was provided, at the FBI's request, to inform the FBI's evaluation of its policies for gathering information relevant to national security and law enforcement investigations.

2.  Whether the district court properly granted summary judgment for the government under Exemption 1 of the Freedom of Information Act, 5 U.S.C. § 552(b)(1), based on the government's declaration describing the classified nature of portions of the document at issue.

**PERTINENT STATUTES AND REGULATIONS**

Pertinent statutes are reproduced in the addendum to this brief.

**STATEMENT OF THE CASE**

The single document at issue in this Freedom of Information Act (FOIA) suit was generated by the Office of Legal Counsel of the Department of Justice (OLC).  The FBI sought OLC's legal advice in the course of evaluating the FBI's policies governing information-gathering techniques used in certain national security and law enforcement investigations.  The FBI was considering, in particular, the circumstances

2

under which it may seek certain records from nongovernmental entities such as telephone companies.  The OLC Opinion at issue in this case provides advice to the FBI regarding the viability of one legal theory on which such records might be sought.

The district court held that the OLC Opinion was protected in its entirety by the deliberative process privilege, which is incorporated into Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5).  The court also concluded that portions of the document were subject to Exemption 1, 5 U.S.C. § 552(b)(1), because they were properly classified.  The district court thus granted summary judgment for the government.

## STATEMENT OF FACTS

1.  This FOIA litigation concerns a legal opinion issued by the Office of Legal Counsel in the Department of Justice.  The Attorney General has statutory authority to give his opinion on questions of law to the President, heads of executive departments, and heads of military departments.  *See* 28 U.S.C. §§ 511–513.  That authority has been delegated to OLC.  28 C.F.R. § 0.25(a).

"The principal function of OLC is to assist the Attorney General in his role as legal advisor to the President of the United States and to

departments and agencies of the Executive Branch."  Colborn Decl. ¶ 2

[JA ___].  In carrying out this function, "OLC provides advice and prepares

opinions addressing a wide range of legal questions involving the

operations of the Executive Branch."  *Id.*  But "OLC does not purport, and

in fact lacks authority, to make policy decisions," and "OLC's legal advice

is not itself dispositive as to any policy adopted."  *Id.* [JA ___–__].  Agencies

are not required to seek opinions from OLC on questions of law.

2.  The USA PATRIOT Improvement and Reauthorization Act of 2005

directed the Department of Justice's Office of Inspector General (OIG) to

review the use of "national security letters."  Pub. L. No. 109-177, § 119, 120

Stat. 192, 219 (2006).  National security letters are one mechanism by which

the FBI can obtain information from third parties, such as telephone

companies or financial institutions, in connection with investigations.  OIG

initially focused on four federal statutes that authorize the issuance of

national security letters in various contexts.  *See* 12 U.S.C. § 3414(a)(5)(A)

(Right to Financial Privacy Act); 18 U.S.C. § 2709 (Electronic

Communications Privacy Act); 15 U.S.C. § 1681u(a)–(b) (Fair Credit

Reporting Act); 50 U.S.C. § 436(a)(1) (National Security Act).

OIG concluded that in some instances the FBI was soliciting information from telephone companies by issuing letters that did not follow the procedures applicable to requests under those four statutes. OIG referred to these letters as "exigent letters" because they typically referred to "exigent circumstances." OIG concluded in a report issued in 2007 that the letters were beyond the FBI's authority. *See* Dep't of Justice, OIG, *A Review of the Federal Bureau of Investigation's Use of National Security Letters*, at 95–98 (2007).[1]

This specific category of letters was the subject of a subsequent OIG Report, issued in 2010. In the course of preparing that report, OIG submitted a draft to the FBI for comment. According to the final OIG Report, FBI responded to the draft report by "assert[ing] for the first time that as a matter of law the FBI is not required to serve [national security letters] to obtain [certain records] in national security investigations." Dep't of Justice, OIG, *A Review of the Federal Bureau of Investigation's Use of*

---

[1] http://www.justice.gov/oig/special/s0703b/final.pdf

*Exigent Letters and Other Informal Requests for Telephone Records* ("2010 OIG

Report"), at 263 (2010) [JA ___].[2]

In the course of responding to the draft OIG report, the FBI sought

"OLC advice that would assist FBI's evaluation of how it should respond to

[the draft OIG Report]." Colborn Decl. ¶ 9 [JA ___]. OLC provided the FBI

with an opinion presenting such advice, which is the document at issue in

this appeal. The OLC Opinion was shared with OIG and other interested

government officials, but has not been disseminated publicly. To the

contrary, both the discussion of the legal theory on which the FBI sought

advice and the particular category of records to which the legal theory

applied were redacted in the public version of the OIG Report in order to

protect classified information. *See* 2010 OIG Report, at 264 [JA ___]; *see also*

*id.* at 1 n.1 [JA ___] (noting that classified portions of report were redacted).

The Report revealed only that "OLC agreed with the FBI that under certain

circumstances [a redacted authority] allows the FBI to ask for and obtain [a

type of records whose description was redacted] on a voluntary basis from

---

[2] http://www.justice.gov/oig/special/s1001r.pdf

the providers, without legal process or a qualifying emergency." *Id.* at 264–

65 [JA ___–__].

After considering the OLC Opinion, OIG opined that the use of this

particular authority "to obtain records has significant policy implications

that need to be considered by the FBI, the Department [of Justice], and the

Congress." *Id.* at 265 [JA ___].  Although the FBI stated that it had reached

a policy decision not to rely on this particular authority, *id.* at 265 n.283,

OIG recommended "that the Department notify Congress of this issue and

of the OLC opinion interpreting the scope of the FBI's authority under it, so

that Congress can consider [the redacted authority] and the implications of

its potential use." *Id.* at 268 [JA ___].

3.  Plaintiff sought disclosure of the OLC Opinion from the

Department of Justice under the Freedom of Information Act (FOIA),

5 U.S.C. § 552.  After the Department responded that the document was

exempt from disclosure, plaintiff instituted this action.  The district court

granted the government's summary-judgment motion.

The district court concluded that the government had properly

invoked Exemption 5 of the FOIA, which authorizes the government to

refrain from disclosing "inter-agency or intra-agency memorandums or

letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). The court held, in particular, that the OLC Opinion would be protected in litigation by the deliberative process privilege, which promotes the quality of government decision-making by allowing candid, confidential discussions regarding policy options.

The court explained that the OLC Opinion "contains inter-agency material that was generated as part of a continuous process of agency decision-making, namely how to respond to the OIG's critique of the FBI's information-gathering methods in certain investigations." SJ Op. 14 [JA ___]. Because "OLC prepared the memorandum at issue . . . to assist the FBI in arriving at its policy decision[,] . . . it is not hard to imagine how disclosure of the OLC Opinion would likely interfere with the candor necessary for open discussions on the FBI's preferred course of action regarding the OIG evaluation." *Id.* at 14–15 [JA ___]. The court concluded that the deliberative process privilege applied to "the entirety of the OLC Opinion." *Id.* at 16 [JA ___]. "Because all of the information withheld pursuant to the attorney-client privilege was also withheld pursuant to the deliberative process privilege," the district court did "not need to consider

8

the propriety of the [government's] application of the attorney-client privilege." *Id.* at 15–16 [JA ___–__].

The district court also concluded that the government had properly "withheld from the plaintiff specific portions of the OLC Opinion that contained highly specific, classified information relating to FBI intelligence sources or methods." *Id.* at 6 [JA ___]. Based on declarations from officials at the FBI and at OLC, the court determined that "the classification markings in the OLC Opinion . . . were properly made," *id.*, as the portions marked as classified "were properly classified . . . as intelligence activities, sources or methods," and "disclosure of such information could reasonably be expected to cause damage to national security," *id.* at 8 [JA ___].

## SUMMARY OF ARGUMENT

The deliberative process privilege enhances the quality of decision-making within the federal government by protecting the ability of decision-makers and their advisers to have confidential, candid discussions and deliberations regarding policy options. To do so, the privilege protects from disclosure documents that reflect the deliberative process by which the government arrives at a policy decision.

This case involves a document generated in the course of the FBI's evaluation of its policies regarding information-gathering techniques that the FBI might employ in connection with national security and law enforcement investigations. In the course of that policy review, the FBI voluntarily sought advice from the Office of Legal Counsel regarding the legality of a certain technique as applied to a certain category of records. The resulting OLC Opinion formed part of the FBI's deliberative process in evaluating its information-gathering techniques and related investigative policies, and the district court correctly concluded that the government properly invoked the deliberative process privilege.

Mandatory disclosure of OLC's opinions would chill deliberative discussions within the Executive Branch. OLC serves a valuable role in providing confidential legal advice to federal agencies as they develop their policies. Protecting the confidentiality of candid communications between OLC and policy-making agencies lies at the very core of the deliberative process privilege, which is a uniquely governmental privilege designed to promote the quality of government decision-making.

Plaintiff nonetheless suggests that the OLC Opinion must be disclosed because it constitutes the "working law" of a federal agency. But

10

the doctrine requiring agencies to reveal their "working law" operates to ensure that private individuals will be made aware of rules, policies, and practices with which they are expected to conform their conduct, or that will be applied by the agency in regulatory or adjudicatory proceedings. OLC does not, however, prescribe rules applicable to the general public. Its role is instead to advise other agencies regarding a wide range of legal questions, including questions that might relate to those agencies' formulation of policies that directly affect the public. The OLC Opinion has no binding legal effect on any member of the public, but rather is a classic example of the deliberative process at work.

Plaintiff also mistakenly urges that the FBI has expressly adopted the OLC Opinion and thus transformed it into the FBI's own rationale for a decision. Plaintiff can point to no decision of the FBI that expressly cited, much less adopted, the OLC Opinion. The FBI's references to the Opinion in discussions with Congress and other parts of the Executive Branch do not come close to express adoption of the Opinion's conclusion and reasoning as the FBI's own rationale for a policy decision.

In addition to correctly concluding that the application of the deliberative process privilege disposes of the entire case, the district court

11

also addressed, and accepted, the government's argument that portions of the OLC Opinion were not subject to disclosure for the additional reason that they were properly classified. Plaintiff does not dispute that portions of the document were properly classified. Instead, plaintiff argues that the district court should have engaged in a more searching review to ascertain whether the government appropriately distinguished between classified information and other portions of the document. But this Court has specifically and repeatedly rejected requests for more searching review of classification determinations that are made in good faith by the Executive Branch. The district court properly rejected plaintiff's request for such review.

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's grant of summary judgment. *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 774 (D.C. Cir. 2002). The district court's determination whether to review documents *in camera* is reviewed for abuse of discretion. *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 626 (D.C. Cir. 2011).

# ARGUMENT

## I.     The OLC Opinion was properly withheld under Exemption 5.

The OLC Opinion at issue in this case provided legal advice to the FBI as that agency considered its policies regarding the use of certain information-gathering techniques in connection with national security and law enforcement investigations.  The deliberative process privilege is a uniquely governmental privilege designed to protect the confidentiality of advice and other candid exchanges on policy matters within the Executive Branch in order to ensure robust internal deliberation and effective government decision-making.  The district court correctly concluded that the government properly invoked the deliberative process privilege.

### A.     The OLC Opinion is predecisional and deliberative, and its disclosure would inhibit discussions essential to formulating agency policies.

As this Court has recognized, Exemption 5 of the FOIA, which incorporates the deliberative process privilege, reflects Congress's "legislative judgment that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl because the full and frank exchange of ideas on legal or policy matters would be impossible."  *Judicial Watch, Inc. v. Dep't of Energy*, 412

13

F.3d 125, 129 (D.C. Cir. 2005) (internal quotation marks omitted). Indeed, as the Supreme Court has explained, "the 'frank discussion of legal or policy matters' in writing might be inhibited if the discussion were made public; and . . . the 'decisions' and 'policies formulated' would be the poorer as a result." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (quoting S. Rep. No. 89-813, at 9 (1965)); *see also* H.R. Rep. No. 89-1497, at 10 (1966) (similar language). Thus, while "Exemption 5 is to be construed as narrowly as consistent with efficient Government operation," it must be applied in a manner that "protect[s] the decisionmaking processes of government agencies." *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 773–74 (D.C. Cir. 1988) (*en banc*) (internal quotation marks omitted).

The deliberative process privilege applies to those documents that are "both predecisional and deliberative." *Id.* at 774. The first requirement distinguishes between "documents which explain an agency's final decision," which must be disclosed, and "documents which are predecisional," which may be withheld. *Id.* The second requirement turns on "whether or not the information requested . . . 'reflects the give-and-take of the consultative process.'" *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

14

The district court correctly concluded that the OLC Opinion at issue here is both predecisional and deliberative. The "OLC Opinion was sought by the FBI in connection with the agency's 're-evaluation' of its use of sensitive techniques in national security and law enforcement investigations, in response to questions raised about such techniques by the OIG." SJ Op. 14 [JA ___]. The Opinion was drafted specifically "to assist the FBI in arriving at its policy decision." *Id.* at 14–15 [JA ___–__]. Consultation with legal advisers at the Department of Justice constitutes precisely the sort of "give-and-take of the consultative process" that the deliberative process privilege was designed to protect. *See Wolfe*, 839 F.2d at 774; *see also Sears*, 421 U.S. at 151 n.18 (noting that "[a]gencies are, and properly should be, engaged in a continuing process of examining their policies," and cautioning that "courts should be wary of interfering with this process").

The OLC Opinion could not plausibly be described as "explain[ing] [the FBI's] final decision" about how, if at all, to alter its investigatory techniques. *See Wolfe*, 839 F.2d at 774. That decision was the FBI's to make after consulting with OLC and any other parts of the government it chose to involve in its policy-making process. *See* 2010 OIG Report, at 265 n.283

15

(noting that FBI had declined, for the time being, to rely on the authority discussed in the OLC Opinion).

Unable to take issue with the district court's conclusion that the OLC Opinion came in the middle, rather than at the end, of the FBI's process of reviewing its investigative techniques, plaintiff treats this case as if the only relevant decision-making process took place within OLC. Plaintiff's failure to analyze the OLC Opinion in the context in which it was sought and provided gives short shrift to the values protected by the deliberative process privilege.

This Court has consistently interpreted the deliberative process privilege in keeping with its purpose of protecting the confidentiality of agency deliberations. In *Sterling Drug, Inc. v. FTC*, 450 F.2d 698 (D.C. Cir. 1971), this Court held that the deliberative process privilege protected memoranda written by individual Commissioners that might have reflected the grounds for a decision reached by the Federal Trade Commission as a whole. The Court emphasized that "the most important consideration" was the Court's view "that there is a great need to preserve the free flow of ideas between Commissioners," and that disclosing

16

memoranda of individual Commissioners "might well infringe upon these essential communications." *Id.* at 708.

Mandatory disclosure of OLC opinions would similarly infringe upon essential communications. OLC plays a critical role in providing candid legal advice to agencies making difficult policy decisions, and protecting that advice is essential to the smooth operation of the Executive Branch. The district court properly found it "not hard to imagine how disclosure of the OLC Opinion would likely interfere with the candor necessary for open discussions on the FBI's preferred course of action regarding the OIG evaluation." SJ Op. 15 [JA ___].

To begin with, the privilege protects the ability of decision-makers to seek advice in confidence. "It is essential to the mission of the Executive Branch that OLC legal advice provided in the context of internal deliberations not be inhibited by concerns about public disclosure in order to ensure the candor of Executive Branch deliberations so that Executive Branch officials may continue to request and rely on legal advice from OLC on such sensitive matters." Colborn Decl. ¶ 4 [JA ___].

The FBI was under no obligation to seek OLC's advice, and there is good reason to believe that the FBI might not have consulted OLC at all if it

17

knew that the resulting opinion would be subject to mandatory disclosure. "If OLC routinely published its advice concerning all contemplated actions of uncertain legality, Executive Branch officials would be reluctant to seek OLC advice in the early stages of policy formulation—a result that would undermine rule-of-law interests." OLC Best Practices, at 6 [JA ___]. Thus, although the government may waive applicable privileges by making certain OLC opinions public, OLC will "decline to publish opinions when doing so is necessary to preserve internal Executive Branch deliberative processes." *Id.*

Similarly, the deliberative process privilege ensures that advisers can provide robust, nuanced, and candid advice to decision-makers, uninhibited by concerns about potential public disclosure. The confidentiality of communications between FBI decision-makers and their OLC advisers allows OLC to provide candid and balanced input to the FBI's evaluation of various policy options. The OLC Best Practices memorandum, on which plaintiff relies, states that "regardless of the Office's ultimate legal conclusions, [an Opinion] should strive to ensure that it candidly and fairly addresses the full range of relevant legal sources and significant arguments on all sides of a question." OLC Best Practices,

18

at 2 [JA ___].  Plaintiff makes no attempt to explain how OLC could

reasonably be expected to continue to provide candid and balanced

assessments if its opinions were subject to mandatory public disclosure,

nor why decision-makers could be expected to continue to seek OLC

advice.

OLC's longstanding role of providing confidential legal advice

within the Executive Branch is particularly critical to analysis of the

deliberative process privilege, which is a uniquely governmental privilege

whose core function is to preserve the candid exchange of views necessary

for effective government decision-making.  Foreclosing the possibility that

the President and Executive Branch agencies could receive such candid

advice in confidence would have a deleterious effect on the effectiveness of

the Presidency itself and the President's constitutional obligation to take

care that agencies faithfully execute the laws.  *See* U.S. Const., Art. II, § 3.

For many of the same reasons that the rationale for protecting

confidentiality under the deliberative process privilege applies with full

force in this case, the rationale for requiring the disclosure of final decisions

does not.  The Supreme Court has observed that while "the public is vitally

concerned with the reasons which did supply the basis for an agency

19

policy actually adopted," "[t]he public is only marginally concerned with reasons supporting a policy which an agency has rejected, or with reasons which might have supplied, but did not supply, the basis for a policy which was actually adopted on a different ground." *Sears*, 421 U.S. at 152.

Here, plaintiff acknowledges that "'OLC does not purport, and in fact lacks authority, to make policy decisions.'" Appellant's Br. 28 (quoting Colborn Decl. ¶ 2 [JA ___]). The OLC Opinion did not represent a final determination on any policy matter, and at the time the OLC Opinion was produced and provided to the FBI, the relevant policy questions were still under review by that agency. Requiring release of the OLC Opinion would not vindicate the public's interest in understanding the basis for any policy the FBI ultimately adopted.

### B.    The OLC Opinion does not constitute the "working law" of any agency.

1.  Plaintiff does not advance its argument by suggesting that the OLC Opinion constitutes "working law." Because the OLC Opinion has no legal effect on private parties, the concept of "working law" has no application in this case.

20

This Court has adopted "a narrow definition of 'working law' that limits the term to those policies or rules, and the interpretations thereof, that 'either create or determine the extent of the substantive rights and liabilities of a person.'" *Afshar v. Dep't of State*, 702 F.2d 1125, 1141 (D.C. Cir. 1983) (quoting *Cuneo v. Schlesinger*, 484 F.2d 1086, 1090 (D.C. Cir. 1973)). This definition was "understood by all the sources relied upon by the Supreme Court in *Sears* for the proposition that 'working law' is not protected by exemption 5." *Afshar*, 702 F.2d at 1141 (citing *Sears*, 421 U.S. at 153); *see also* Appellant's Br. 21 (acknowledging that in assessing whether a document constitutes working law, "[f]oremost, the Court looks to whether the disputed record creates or determines the extent of the substantive rights and liabilities of a person" (brackets and internal quotation marks omitted)).

Thus, "'[u]nder the FOIA an agency must disclose its rules governing relationships with private parties and its demands on private conduct.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 n.20 (1989) (quoting Easterbrook, *Privacy and the Optimal Extent of Disclosure Under the Freedom of Information Act*, 9 J. Legal Stud. 775, 777 (1980)). Those "agency documents that are binding on the public, 'govern

21

the adjudication of individual rights, or require particular conduct or

forbearance by any member of the public'" are "documents that fit

approximately within the narrow interpretation of the term 'working

law.'" *Afshar*, 702 F.2d at 1143 (quoting *Federal Open Market Comm. of the*

*Fed. Reserve System v. Merrill*, 443 U.S. 340, 352 (1979) (brackets and ellipses

omitted)).  This analysis confirms that "working law" consists of only those

documents that govern an agency's interaction with the public.  *See also*

Davis, *The Information Act: A Preliminary Analysis*, 34 U. Chi. L. Rev. 761,

797 (1967) (describing "an outrageous system of secret law" formed by

"opinions and interpretations  . . . that the agency's employees may be

instructed to apply . . . in all individual cases" (internal quotation marks

omitted)), *cited in Sears*, 421 U.S. at 153.

 The FOIA's legislative history underscores its focus on the rules that

an agency applies in determinations regarding the rights and obligations of

the public.  The FOIA was originally enacted as an amendment to a

provision of the Administrative Procedure Act that had required agencies

to make public their rules, opinions, and orders that affect the rights and

obligations of members of the public.  *See* 5 U.S.C. § 1002 (repealed 1966).

The "public information" section of the APA had been designed to require

agencies to "disclose their set-ups and procedures, to publish rules and interpretations intended as guides for the solution of cases, and to proceed in consistent accordance therewith until publicly changed."  H.R. Rep. No. 79-1980, at 21 (1946).

The core function of the public-information section was thus to allow individuals who were subject to federal agency regulation to be aware of the rules that would be applied to them, so that they could adjust their conduct accordingly.  The FOIA was enacted in part as a response to concerns that exceptions to the APA's public-information provision were allowing the statute to be treated "as an authority for withholding, rather than disclosing, information."  H.R. Rep. No. 89-1497, at 4 (1966).  Congress included in the FOIA, *see* 5 U.S.C. § 552(a)(2), provisions requiring agencies to make public, and to index, the rules, opinions, and orders previously covered by the APA's public-information provision, but without the imprecise exception for materials "requiring secrecy in the public interest," 5 U.S.C. § 1002 (repealed 1966).

The Committee Reports explained that making such materials available to the public "is necessary to afford the private citizen the essential information to enable him to deal effectively and knowledgeably

23

with the Federal agencies," and to "prevent a citizen from losing a controversy with an agency because of some obscure and hidden order or opinion which the agency knows about but which has been unavailable to the citizen simply because he had no way in which to discover it." S. Rep. No. 89-813, at 7 (1965); H.R. Rep. No. 89-1497, at 8 (1966) (similar language); *see also Hearings Before the Subcommittee on Administrative Practice and Procedure of the Senate Judiciary Committee, Administrative Procedure Act*, 89th Cong., 1st Sess. 143–45, 187–88 (1965) (testimony of Professor Kenneth Culp Davis) (urging that "law that affects any private person should be open to public inspection" and giving as examples orders and opinions in deportation proceedings, decisions on appeals of visa issues, and orders allowing rescissions of exchange visitor status for certain aliens). This Court has recognized that it is these provisions of the FOIA, and not the more general provisions that require certain other agency records to be available on request, that underlie the prohibition, repeatedly cited by plaintiff, against "secret law." *See Afshar*, 702 F.2d at 1142 n.21 (citing 5 U.S.C. § 552(a)(2)).

This aspect of the APA and the FOIA has no evident application to OLC opinions, which do not regulate the public but rather serve to provide

legal advice to agencies, which in turn may (or may not) regulate the public. Whether or not the APA and the FOIA require the agency that has received advice from OLC to provide a statement of the basis for a particular policy decision, OLC's legal advice itself—as opposed to any decisions or policies that might be informed by that advice—is not the working law of any agency.

Plaintiff's contrary argument is premised on a fundamental misunderstanding of the sense in which OLC opinions are "controlling" or "binding," and conflates the authoritativeness of the opinion with the concept of "working law." OLC opinions operate by custom and practice of the Executive Branch to provide the legal backdrop for broader policy deliberations within the Executive Branch. They do not govern the substantive rights and obligations of private parties; rather, an agency that receives an OLC opinion is charged with developing its own policies for dealing with regulated entities and other private parties.

While Congress specifically contemplated that the Attorney General would provide legal opinions to the heads of executive departments, *see* 28 U.S.C. § 512, no federal statute addresses the effect of an opinion on the requesting agency. OLC opinions may turn out to be irrelevant to the

25

agency's positions (if, for example, the agency declines to take a position

that OLC considers to be legally available), or only tangentially relevant (if,

for example, the agency's ultimate decision rests primarily on issues other

than those addressed by OLC). In other instances, OLC opinions may

constitute a constraint on federal agencies as they develop their own

policies, insofar as the opinions suggest that certain options would

contravene OLC's interpretation of the governing law. In each case, an

OLC opinion providing advice to an agency is a precursor to the agency's

own policy determination, which may, in turn, affect the rights or

obligations of private parties. Authoritative legal advice that is provided to

executive agencies or officials as part of a larger policy deliberation is

protected by the deliberative process privilege.

Here, for example, the FBI was in the process of evaluating its

investigative techniques. The OLC Opinion does not, of its own force,

provide instructions to FBI officials regarding which investigative methods

to employ, much less govern the substantive rights or obligations of private

parties. It is the FBI, and not OLC, that must determine the policies to

adopt regarding its investigative techniques. Even if the FBI ultimately

adopted a policy that could be described as "working law," the OLC

26

Opinion does not constitute "working law" any more than any of the other various inputs that the FBI might consider in its legal and policy analysis, whether or not the FBI felt at liberty to disregard them.

Plaintiff mistakenly urges that the OLC Opinion "shapes the substantive privacy rights of current and future telephone company customers whose records may be obtained pursuant to the Opinion's authority."  Appellant's Br. 21.  The OLC Opinion is simply advice to the FBI regarding the proper construction of the governing statute, and has no legal effect on the rights or obligations of telephone companies or their customers.  Neither the telephone companies nor their customers are regulated by the OLC Opinion or expected to conform their behavior to it; to the contrary, the OLC Opinion merely concluded that the FBI may, if it chooses, lawfully seek and obtain records on a voluntary basis from communications service providers.  2010 OIG Report, at 263, 265 [JA ___, ___].  Telephone companies responding to any such request would be expected to consider the terms of the request and the applicable statutory law.  They would not be expected to conform their conduct to the OLC Opinion.  And to the extent that any dispute might arise between the FBI

27

and a private entity, the OLC Opinion would have no binding effect on the resolution of that dispute.

Because the OLC Opinion does not create any body of law to which private entities must conform their conduct, plaintiff focuses on the Opinion's use within the Executive Branch, urging that "[t]he OLC Opinion affects the FBI's 'rights'" and that it "provides a powerful shield of legal immunity for government officials relying in good faith on the Opinion's determinations."  Appellant's Br. 21–22.  Plaintiff cannot seriously contend that the OLC Opinion constitutes impermissible "secret law" with respect to the FBI or its officers who might rely on it: the possible effect of the OLC Opinion on government officers who have access to the Opinion has no bearing on whether the OLC Opinion affects the substantive rights of members of the public to whom the Opinion has not been disclosed.  Plaintiff's focus on government officials who might rely on the Opinion merely underscores that the Opinion does not secretly regulate the public.

2.  Consistent with this Court's definition of "working law," the cases on which plaintiff relies all involved documents that reflected determinations that were applied by agencies as the rule of decision in particular matters that came before the agency, either prospectively or

28

retrospectively.  These cases have no application to the OLC Opinion at issue here, which merely informs the FBI's policy choices.

In *Coastal States Gas Corp v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980), this Court noted that an agency must disclose "'orders and interpretations which it actually applies to cases before it,' in order to prevent the development of 'secret law.'"  *Id.* at 867 (quoting *Sterling Drug*, 450 F.2d at 708).  The Court held in particular "that an agency will not be permitted to develop a body of 'secret law,' *used by it in the discharge of its regulatory duties and in its dealings with the public*, but hidden behind a veil of privilege."  *Id.* (emphasis added).

Similarly, in *Schlefer v. United States*, 702 F.2d 233 (D.C. Cir. 1983), this Court considered legal opinions of the Office of the Chief Counsel of the Maritime Administration.  The opinions related to matters as to which "legal clearance by the Office of the Chief Counsel would be required."  *Id.* at 240.  The legal opinions thus constituted "authoritative Agency decisions in the cases to which they are addressed and . . . , in practice, . . . also guide subsequent Agency rulings."  *Id.* at 244.  The FBI does not need clearance from OLC before taking actions that affect the public.  Instead, appropriate clearance would be required from FBI officials who formulate policy.

29

The other cases on which plaintiff relies likewise involved issuance of documents announcing or explaining agency policy or governing the agency's dealings with the public.  In *Public Citizen, Inc. v. Office of Management & Budget*, 598 F.3d 865 (D.C. Cir. 2010), this Court required disclosure only of documents that "neither make recommendations for policy change nor reflect internal deliberations on the advisability of any particular course of action," but rather "reflect[] OMB's formal or informal policy on how it carries out its responsibilities."  *Id.* at 875.  In *Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997), this Court required disclosure of documents from the Chief Counsel of the Internal Revenue Service that were circulated for its field personnel to apply "in its dealings with the taxpaying public."  *Id.* at 618; *see also Tax Analysts v. IRS*, 294 F.3d 71, 80–81 (D.C. Cir. 2002) (requiring disclosure of documents that "IRS conceded . . . are all but identical to" the documents at issue in the previous *Tax Analysts* case).  In *Sterling Drug*, this Court considered the Federal Trade Commission's approval of a proposed acquisition and required the disclosure of any memoranda issued by the full Commission that constituted "orders and interpretations" that the Commission "actually applies in cases before it."  *Sterling Drug*, 450 F.2d at 701, 708.  In *Taxation*

*with Representation Fund v. IRS*, 646 F.2d 666 (D.C. Cir. 1981), this Court ordered disclosure of documents that "are used and relied upon by agency personnel after being reviewed and approved by superiors with decisionmaking authority," *id.* at 681, including documents that "explain[] rulings issued by the Assistant Commissioner," *id.* at 682, documents that "explain the reasons behind the adoption of final agency action," *id.* at 683, and documents that "clearly pertain to the law that will be applied by the agency henceforth" and contain "explanations of the agency's 'final' legal position on an issue," *id.* at 684. And in *Sears*, the Supreme Court required the disclosure of documents directing the dismissal of charges before the National Labor Relations Board, concluding that they were final decisions made in the "adjudication of cases." *Sears*, 421 U.S. at 158 (internal quotation marks omitted).

Conversely, this Court has consistently held that legal advice to policymakers is protected by the deliberative process privilege. In *Murphy v. Dep't of Army*, 613 F.2d 1151 (D.C. Cir. 1979), this Court considered a memorandum from the Army General Counsel to the Assistant Secretary charged with determining whether to approve a contract with the Commonwealth of Kentucky. *Id.* at 1152–53. Although it appeared that the

only remaining obstacle to approval was legal uncertainty regarding the enforceability of certain obligations that Kentucky was incurring, this Court described the exchange of memoranda between the Assistant Secretary and the General Counsel as "a classic case of the deliberative process at work." *Id.* at 1154. The Court noted that governing regulations afforded the General Counsel "the duty of 'determining the legal position of the Army on any legal question or legal procedure,'" but concluded that "there is nothing in that delegation of authority to suggest that his determinations are to be final decisions of the Department of the Army." *Id.* at 1154–55 n.9 (quoting Army Regulation 10-5, para. 2-10).

Similarly, in *Brinton v. Dep't of State*, 636 F.2d 600 (D.C. Cir. 1980), this Court upheld the application of Exemption 5 to legal advice provided by the Office of the Legal Adviser in the State Department, noting that the Legal Adviser's "role is to give advice to those in the State Department who . . . make the policy decisions." *Id.* at 605. Here, similarly, OLC's role is to give legal advice to those who make the policy decisions.

Plaintiff's reliance on *National Council of La Raza v. Dep't of Justice*, 411 F.3d 350 (2d Cir. 2005), underscores the error in its analysis. That case, like this one, concerned an OLC opinion. But there, "[p]laintiffs effectively

concede[d] on appeal" that the document at issue satisfied the prerequisites for the deliberative process privilege, in that it was predecisional and deliberative. *Id.* at 356 n.4. The only question was whether the recipient of OLC's legal advice had "chosen 'expressly to adopt or incorporate by reference [a] . . . memorandum previously covered by Exemption 5 in what would otherwise be a final opinion.'" *Id.* at 356 (quoting *Sears*, 421 U.S. at 161) (alterations in original). Regardless of whether the Second Circuit employed the proper standard for adoption, an issue discussed in more detail below (*see* Part I.C, *infra*), the court appropriately focused on the final decision of the agency charged with regulating the public. The Second Circuit did not conclude, as plaintiff urges here, that OLC opinions always constitute final decisions regardless of what the recipient of OLC's legal advice ultimately chooses to do with that advice. Plaintiff points to no court at any level that has taken that approach. *See, e.g., Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 2d 65, 75–77 (D.D.C. 2008) (holding OLC Opinion may be protected by deliberative process privilege); *CREW v. Office of Admin.*, 249 F.R.D. 1, 4–7 (D.D.C. 2008) (same).

### C.    The FBI has not expressly adopted the OLC Opinion.

Plaintiff presents no basis for concluding that the FBI has expressly adopted the OLC Opinion.  The Supreme Court held in *Sears* that "if an agency chooses *expressly* to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion," the document may no longer be withheld under the deliberative process privilege.  *Sears*, 421 U.S. at 161 (emphasis in original).  When "predecisional recommendations . . . are expressly adopted in the final, nonexempt memorandum, . . . 'the reasoning becomes that of the agency and becomes *its* responsibility to defend.'"  *Afshar*, 702 F.2d at 1142 (quoting *Sears*, 421 U.S. at 161) (emphasis in *Sears*).

Plaintiff cannot point to a decision by the FBI that expressly adopted the OLC Opinion as its reasoning.  Most of plaintiff's "adoption" arguments fail as a matter of simple chronology.  Plaintiff argues that (1) "[f]rom 2002 to 2006, the FBI engaged in surveillance practices" at issue here; (2) "in July 2009, . . . the Bureau asserted for the first time its novel interpretation of the law"; and (3) "[i]n January 2010, the OLC issued its Opinion which, in short, agreed with the FBI's previous legal interpretation."  Appellant's Br. 35 (appellant's alterations and quotation

34

marks omitted).  Even assuming that any of the FBI's actions before 2010

were final decisions in the relevant sense, the FBI could not have premised

those decisions on the OLC Opinion because the OLC Opinion did not exist

at the time those decisions were made.

Citing OLC's declaration, plaintiff next urges that the FBI

subsequently "used the OLC Opinion to 'ensure that any information-

gathering procedures compl[ied] fully with the law.'"  Appellant's Br. 35

(quoting Colborn Decl. ¶ 13 [JA ___]).  The quoted sentence reads, in its

entirety, as follows: "The Opinion is deliberative because it constitutes

advice used by decision-makers at the FBI and by other Executive Branch

agencies and Department components in the context of their efforts to

ensure that any information-gathering procedures comply fully with the

law."  Colborn Decl. ¶ 13 [JA ___].  If consulting a document containing

advice in the course of formulating new policies constituted express

adoption, it is unclear what would be left of the deliberative process

privilege, whose core purpose is to protect the confidentiality of such

advice.

Finally, plaintiff urges that "the agency has publicly referenced the

Opinion's reasoning and conclusions."  Appellant's Br. 35.  Mere

references, as opposed to express adoption, are not enough to defeat the deliberative process privilege: this Court has upheld the invocation of the privilege despite a "casual allusion in a post-decisional document to subject matter discussed in some pre-decisional, intra-agency memoranda." *Common Cause v. IRS*, 646 F.2d 656, 660 (D.C. Cir. 1981). This Court has also observed that the Supreme Court has "refused to equate reference to a report's conclusions with adoption of its reasoning, and it is the latter that destroys the privilege." *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1197 (D.C. Cir. 1991); *see Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 184–85 (1975) ("because the evidence utterly fails to support the conclusion that the reasoning in the reports is adopted by the Board as *its* reasoning, even when it agrees with the conclusion of a report, . . . the reports are not final opinions and do fall within Exemption 5").

The specific instances that plaintiff discusses underscore that the FBI has not adopted the OLC Opinion as its own rationale for a decision, but instead merely used the Opinion in ongoing deliberations about policy. First, plaintiff notes that the 2010 OIG Report made reference to the Opinion. But OIG was not itself making any policy decision affecting the

public, and was not in a position to adopt for the FBI or the Department of Justice an OLC opinion's conclusions and rationale. Instead, the OIG Report suggested that the FBI further consider the issues raised in the Opinion and "recommend[ed] that the Department notify Congress of this issue and of the OLC Opinion . . . so that Congress can consider" the matter. *See* 2010 OIG Report, at 268 [JA ___].

Second, the FBI provided the Opinion to its congressional oversight committees and "the FBI's general counsel offered to discuss the Opinion with elected officials" in a nonpublic setting. Appellant's Br. 35–36. Such information sharing between branches of government facilitates Congress's legislative oversight role, and treating it as express adoption would defeat the core purposes of the deliberative process privilege. *Cf. Murphy*, 613 F.2d at 1155–56 (noting that FOIA specifically directs "that the exemption section of the Act 'is not authority to withhold information from Congress'" and that treating a disclosure to Congress as a waiver of the privilege would "inevitably" make "executive agencies . . . more cautious in furnishing sensitive information to the legislative branch—a development at odds with public policy which encourages broad congressional access to governmental information") (quoting what was

37

then 5 U.S.C. § 552(c), which has since been recodified as 5 U.S.C. § 552(d)). This Court has squarely held that sharing materials with Congress does not affect an agency's ability to assert the deliberative process privilege.  *See id.*; *accord Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 604 (D.C. Cir. 2001) (citing *Murphy*).

The cases on which plaintiff relies reaffirm that the relevant question is whether an agency has adopted the reasoning and conclusion of a document as its own reasoning for a decision, as opposed to merely sharing it for informational or deliberative purposes.  In *National Council of La Raza*, the Second Circuit reached the conclusion that the government had publicly treated an OLC opinion as "the exclusive statement of, and justification for, its new policy on the authority of states to enforce the civil provisions of immigration law."  *Nat'l Council of La Raza*, 411 F.3d at 357. And in *Brennan Center for Justice v. Dep't of Justice*, 697 F.3d 184 (2d Cir. 2012), the Second Circuit held that an OLC memorandum was adopted as the justification for the determination whether agencies "were constitutionally bound to disregard a duly enacted statute's command."  *Id.* at 202.  While we respectfully disagree with the Second Circuit's analysis in these cases as to the kind of statement that is sufficient to qualify as express

adoption, that court appropriately focused on the question whether the agency had explicitly adopted the reasoning in the OLC opinion as the agency's own rationale for its action.  *See also Taxation with Representation Fund*, 646 F.2d at 682–84 (considering documents that "explain[] rulings issued by the Assistant Commissioner," "explain the reasons behind the adoption of final agency action," and "pertain to the law that will be applied by the agency henceforth").  Plaintiff points to no final decision of the FBI that was expressly justified by reference to the OLC Opinion at issue here.

### D.    The district court appropriately determined that no portion of the document was segregable and did not abuse its discretion by not reviewing the document *in camera*.

The district court's opinion, on its face, refutes plaintiff's assertion that the district court "erred by failing to determine whether there was unclassified, factual information within the OLC Opinion that was reasonably segregable from the Opinion's other content."  Appellant's Br. 50 (internal quotation marks omitted).  In a section of the district court's opinion captioned "Segregability," the court specifically held that "the Department has sufficiently established that no portion of the OLC

Opinion is reasonably segregable and releasable," and thus "f[ound] that

no portion of the OLC Opinion could be segregated and subsequently

released." SJ Op. 16 [JA ___]. Plaintiff's reliance on the requirement that

district courts enter "'an express finding on segregability'" is therefore

entirely misplaced. Appellant's Br. 50 (quoting *Morley v. CIA*, 508 F.3d

1108, 1123 (D.C. Cir. 2007)) (*Morley*'s quotation marks omitted).

The district court's finding was amply supported by the record. The

OLC declarant explained that "[t]hose portions of the Opinion that are

marked unclassified reflect other confidential factual as well as confidential

legal communications provided by the FBI to OLC *for the purpose of*

*obtaining legal advice*." Colborn Decl. ¶ 11 [JA ___–___] (emphasis added).

This statement confirms that the entire document reflects the full and frank

exchange of ideas between the FBI and OLC, and that revealing portions of

the document would reveal the substance of those privileged

communications.

Plaintiff ignores the context in which factual statements were made

and asserts that "factual material cannot generally be withheld under the

deliberative process privilege." Appellant's Br. 50. There is no blanket

exception to the deliberative process privilege for factual material; to the

40

contrary, "[i]n some circumstances, even material that could be characterized as 'factual' would so expose the deliberative process that it must be covered by the privilege." *Wolfe*, 839 F.2d at 774. In *Wolfe*, this Court upheld the agency's decision not to disclose "the dates on which regulatory proposals, identified by subject matter title, were transmitted from one agency to another." *Id.* at 771. This Court concluded that the information sought was protected by the deliberative process privilege, noting that the agency's "very decision to regulate in a particular area often embodies a sensitive and important policy judgment," and that "the general views of the decision-maker on whether to regulate at all are often crucially important pieces of information about predecisional recommendations." *Id.* at 775–76. Here, the FBI's deliberations about what policies it was considering and what investigatory techniques were at issue, as well as the scope of the legal advice sought from OLC, were confidential.

Plaintiff provides no reason to believe that the document contains any segregable information, instead urging that the district court should have demanded more specificity from the government or reviewed the document *in camera*. But this Court has regularly accepted declarations of

41

the sort at issue here without any need for *in camera* review.  In *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771 (D.C. Cir. 2002), this Court affirmed the district court's decision to credit a statement that, after line-by-line review of each document withheld in full, the declarant "determined that 'no documents contained releasable information which could be reasonably segregated from the nonreleasable portions.'"  *Id.* at 776 (quoting government affidavit).  Similarly, in *Loving v. Dep't of Defense*, 550 F.3d 32 (D.C. Cir. 2008), this Court relied on "the description of the document . . . and the agency's declaration that it released all segregable material."  *Id.* at 41.  In *Armstrong v. Executive Office of the President*, 97 F.3d 575 (D.C. Cir. 1996), this Court credited an agency declaration that a document "discusse[d] sensitive intelligence data 'throughout.'"  *Id.* at 578 (quoting government declaration).  The declaration in this case similarly asserted that the entire document reflected information conveyed for the purpose of soliciting legal advice.  *See* Colborn Decl. ¶ 11 [JA ___–__].

"[D]istrict courts have 'broad discretion' to decide whether *in camera* review is necessary to determine whether the government has met its burden."  *Loving*, 550 F.3d at 41.  Plaintiff provides no basis for suggesting that the district court here abused that broad discretion in declining to

require *in camera* review.  In addition, because the only document at issue in this case contains classified information, the district court had additional reason to hesitate before reviewing the document *in camera*.  This Court has emphasized, in the context of evaluating Exemption 1 of the FOIA (discussed below), that "[i]n national security cases, a district court exercises a wise discretion when it limits the number of documents it reviews in camera," and thus "makes it less likely that sensitive information will be disclosed."  *Armstrong*, 97 F.3d at 580.

## II.  The district court properly concluded that portions of the OLC Opinion are protected under Exemption 1.

As discussed above, the government properly withheld the entire document at issue in this case under the deliberative process privilege.  That alone suffices to dispose of this case.  But because the district court also properly determined that portions of the document are protected by Exemption 1 of the FOIA, we discuss that issue here as well.  The district court did not reach, and we therefore do not discuss, the question whether the document was protected by the attorney-client privilege.  If this Court were to conclude that any portion of the document were not protected by

the deliberative process privilege, the attorney-client privilege would be appropriately addressed on remand.

Exemption 1 of the FOIA applies to materials that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The government can meet its burden under Exemption 1 by filing a declaration asserting that the relevant materials are currently properly classified. *See Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).

Here, the government submitted declarations sufficient to carry its burden. The OLC declarant stated that "[t]hose portions of the Opinion which reflect classified factual information provided to OLC by the FBI are marked classified." Colborn Decl. ¶ 11 [JA ___]. The FBI declarant explained that the substantive and procedural requirements for classification under Executive Order 13526 had been satisfied. Corrected Hardy Decl. ¶¶ 9–10 [JA ___–__]. In particular, the declaration stated that the classification markings on the document at issue "were made in order to protect from disclosure classified information which would reveal actual intelligence activities, sources or methods used by the FBI against targets of

44

foreign counterintelligence and counterterrorism investigations or

operations; and disclose the intelligence activities, sources or methods, as

well as intelligence-gathering capabilities used by the FBI to gather specific

information on targets of national security investigations."  *Id.* ¶ 14

[JA ___].  The declaration further explained that the information at issue "is

highly specific in nature and known to very few individuals," and its

disclosure "could reasonably be expected to cause serious damage to

national security because disclosure would allow hostile entities to

discover the current methods and activities used and could then develop

countermeasures which could severely disrupt the FBI's intelligence-

gathering capabilities."  *Id.* ¶ 16 [JA ___].

　　　Plaintiff does not quarrel with these conclusions, and acknowledges

that "the OLC Opinion likely contains *some* properly classified, factual

information that may be withheld under Exemption 1."  Appellant's Br. 44.

*Compare Allen v. CIA*, 636 F.2d 1287, 1292 (D.C. Cir. 1980) (rejecting

affidavits that were "drawn in conclusory terms that merely parrot the

language of the Executive Order").  Instead, plaintiff urges that the

government should have been required "to provide a line-by-line or, even,

a word-by-word description of the distribution of classified information

throughout the document," Appellant's Br. 46, so the district court could conduct a "more searching review," *id.* at 48.

This request for a "more searching review" is directly contrary to this Court's precedents. "If an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, . . . the court should *not* conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions." *Larson*, 565 F.3d at 865 (emphasis added). This Court has emphasized that the "judiciary is in an extremely poor position to second-guess the predictive judgments made by the government's intelligence agencies." *Id.* (internal quotation marks omitted). Accordingly, this Court has "consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Security Studies v. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003).

There is similarly no basis for plaintiff's suggestion that the government should have described the classified information with more specificity. *See* Appellant's Br. 47. The government described the nature of

46

the classified material in a manner that sufficed to permit the district court,

and the plaintiff itself, to credit the assertion that the document contained

material that was properly classified.  To the extent that additional detail

could be provided without itself compromising the classified information,

such information could only give the district court sufficient information to

second-guess the Executive Branch's judgment about which aspects of the

document could, if released, result in damage to national security.

Plaintiff's observation that a significant portion of the document was

classified provides no basis for presuming that some of it was improperly

classified.  *See* Appellant's Br. 46.  Given that the subject of the document is

the use of sensitive investigative techniques in particular situations, it

should be no surprise that much of the discussion would reveal classified

information about the use of those techniques.  Plaintiff provides no basis

other than its own speculation to suggest that the government has

classified material beyond what is necessary to avoid the risk of serious

damage to national security.

Plaintiff does not advance its argument by insinuating that the OLC

Opinion constitutes "information relating to agency misconduct or

illegality," and urging that the district court should therefore have

47

conducted a more "exacting" review.  Appellant's Br. 47–48.  "[T]he mere

allegation of bad faith does not undermine the sufficiency of agency

submissions.  There must be tangible evidence of bad faith; without it the

court should not question the veracity of agency submissions."  *Carter v.*

*U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987).  This Court has

indicated that a court might need to look beyond agency affidavits "if

information contained in agency affidavits is contradicted by other

evidence in the record."  *Id.*  Nothing comparable occurred here; to the

contrary, plaintiff concedes that the document likely contains classified

information.

   With no basis to challenge the agency's good faith in responding to

its FOIA request or litigating this case, plaintiff seeks to impugn the

government's conduct indirectly by attacking the broad range of

investigatory techniques that were discussed in the OIG reports.

*See* Appellant's Br. 48.  Any such allegations are irrelevant to the question

whether the government has properly identified classified information

with respect to the document created in the course of the OIG

investigation.  *See Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir.

1979) ("The sufficiency of the affidavits is not undermined by a mere

48

allegation of agency misrepresentation or bad faith, nor by past agency misconduct in other unrelated cases." (footnote omitted)).

Even assuming for sake of argument that conduct unrelated to the FOIA action itself could in any circumstance serve to undermine the agency's sworn declarations, this would not be that extraordinary case. The only case on which plaintiff relies is a Sixth Circuit decision, *Jones v. FBI*, 41 F.3d 238 (6th Cir. 1994), that the Sixth Circuit subsequently recognized "presented an unusual case and defined the collateral nature of bad faith in FOIA actions according to a very high standard that would infrequently be met." *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 546–47 (6th Cir. 2001). In *Jones*, the Sixth Circuit considered a FOIA request submitted "after the requester's conviction was vacated on the ground that the prosecution had withheld exculpatory evidence that was material to the defense." *Peltier v. FBI*, 563 F.3d 754, 760 n.3 (8th Cir. 2009) (discussing facts of *Jones*). In that context, the court suggested that "'where it becomes apparent that the subject matter of a request involves activities which, if disclosed, would publicly embarrass the agency or that a so-called "cover-up" is presented, government affidavits lose credibility.'" *Jones*, 41 F.3d at 243 (quoting *Ingle v. Dep't of Justice*, 698 F.2d 259, 267 (6th Cir. 1983)).

While the OIG Report as a whole contained some information that painted the FBI in an unflattering light, the only document at issue here is one in which "OLC agreed with the FBI" that certain investigatory techniques were authorized under governing law.  2010 OIG Report, at 264 [JA ___].  It is hard to see how revelation of an opinion that supported the FBI's conclusion would embarrass the FBI or OLC, and there is no evidence to suggest that the government is seeking to conceal the document for improper reasons.  What is clear is that revelation of the OLC Opinion would reveal precisely what investigatory techniques are at issue.  The appropriate officials have reasonably concluded that public disclosure of that information would threaten serious damage to national security.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should

be affirmed.

Respectfully submitted,

STUART F. DELERY
  *Acting Assistant Attorney General*

RONALD C. MACHEN JR.
  *United States Attorney*


 s/ Daniel Tenny
MICHAEL S. RAAB
DANIEL TENNY
  *(202) 514-1838*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*


MAY 2013

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)(7)

I certify that this brief complies with the type-volume limitation of

Fed. R. App. P. 32(a)(7)(B).  This brief contains 9,912 words.


 s/ Daniel Tenny
Daniel Tenny

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2013, I electronically filed the

foregoing brief with the Clerk of the Court for the United States Court of

Appeals for the District of Columbia Circuit by using the appellate

CM/ECF system.  Participants in the case are registered CM/ECF users

and service will be accomplished by the appellate CM/ECF system.


 s/ Daniel Tenny
Daniel Tenny

**ADDENDUM**

# TABLE OF CONTENTS

5 U.S.C. § 552 (excerpts) ..........................................................................A1

**5 U.S.C. § 552**

**§ 552. Public information; agency rules, opinions, orders, records, and proceedings**

(a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public--

(A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

(E) each amendment, revision, or repeal of the foregoing.

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed

A1

published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.

(2) Each agency, in accordance with published rules, shall make available for public inspection and copying--

(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;

(C) administrative staff manuals and instructions to staff that affect a member of the public;

(D) copies of all records, regardless of form or format, which have been released to any person under paragraph (3) and which, because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; and

(E) a general index of the records referred to under subparagraph (D);

unless the materials are promptly published and copies offered for sale. For records created on or after November 1, 1996, within one year after such date, each agency shall make such records available, including by computer telecommunications or, if computer telecommunications means have not been established by the agency, by other electronic means. To the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, staff manual, instruction, or copies of records referred to in subparagraph (D). However, in each case the justification for the deletion shall be explained fully in writing, and the extent of such deletion shall be indicated on the portion of

A2

the record which is made available or published, unless including that indication would harm an interest protected by the exemption in subsection (b) under which the deletion is made.  If technically feasible, the extent of the deletion shall be indicated at the place in the record where the deletion was made.  Each agency shall also maintain and make available for public inspection and copying current indexes providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph to be made available or published.  Each agency shall promptly publish, quarterly or more frequently, and distribute (by sale or otherwise) copies of each index or supplements thereto unless it determines by order published in the Federal Register that the publication would be unnecessary and impracticable, in which case the agency shall nonetheless provide copies of such index on request at a cost not to exceed the direct cost of duplication.  Each agency shall make the index referred to in subparagraph (E) available by computer telecommunications by December 31, 1999.  A final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used, or cited as precedent by an agency against a party other than an agency only if--

     (i) it has been indexed and either made available or published as provided by this paragraph; or

     (ii) the party has actual and timely notice of the terms thereof.

. . .

(b) This section does not apply to matters that are--

     (1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

     . . .

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

. . .

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.  The amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made.  If technically feasible, the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made.

. . .

(d) This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section.  This section is not authority to withhold information from Congress.

. . .

A4