NO. 12-5363

_____

**ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED**
_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

**ELECTRONIC FRONTIER FOUNDATION,**

*Plaintiff – Appellant,*

v.

**UNITED STATES DEPARTMENT OF JUSTICE,**

*Defendant – Appellee.*
_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

**REPLY BRIEF OF APPELLANT**
_____

**David L. Sobel
ELECTRONIC FRONTIER
FOUNDATION
1818 N Street, N.W., Suite 410
Washington, DC 20036
(202) 797-9009**

*Counsel for Appellant*

**Mark Rumold
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333**

*Counsel for Appellant*

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT.................................................................................1

ARGUMENT ...................................................................................................3

   I.     THE OLC OPINION CONSTITUTES THE AGENCY'S
        "WORKING LAW" AND THEREFORE CANNOT BE
        WITHHELD UNDER EXEMPTION 5.................................................3

        A.    As a Binding Legal Interpretation that Shapes the Rights of
               the Public, the OLC Opinion Constitutes the Agency's
               "Working Law" and Must Be Disclosed ...................................4

        B.    This Circuit's Precedent Compels Disclosure of the OLC
               Opinion; The Cases DOJ Cites are Inapposite Because the
               Interpretations Were Merely Advisory....................................10

        C.    Because the Opinion is Neither "Predecisional" Nor
               "Deliberative," Its Disclosure Will Not Harm Agency
               Decisionmaking Processes ......................................................15

   II.    THE OLC OPINION HAS BEEN EXPRESSLY ADOPTED BY
        THE AGENCY ................................................................................18

   III.   THE ATTORNEY-CLIENT PRIVILEGE DOES NOT SHIELD
        THE OLC OPINION FROM DISCLOSURE, AND RESOLUTION
        OF THE ISSUE IS APPROPRIATE ON APPEAL ...........................20

   IV.   DOJ FAILED TO PROVIDE THE TYPE OF SPECIFICITY
        REQUIRED TO WARRANT SUMMARY JUDGMENT UNDER
        EXEMPTION 1 ................................................................................23

   V.    THE DISTRICT COURT'S SEGREGABILITY REVIEW
        FAILED TO ACCOUNT FOR UNCLASSIFIED, FACTUAL
        INFORMATION THAT WAS REASONABLY SEGREGABLE
        FROM THE ALLEGEDLY DELIBERATIVE PORTIONS OF
        THE OLC OPINION ......................................................................27

CONCLUSION .................................................................................................30

# TABLE OF AUTHORITIES[*]

## Federal Cases

*Afshar v. Dep't of State*,
    702 F.2d 1125 (D.C. Cir. 1983) ...................................................................... 4

*Allen v. CIA*,
    636 F.2d 1287 (D.C. Cir. 1980) ................................................................. 27

*Armstrong v. Exec. Office of the President*,
    97 F.3d 575 (D.C. Cir. 1996) ...................................................................... 29

*Brennan Center for Justice v. Dep't of Justice*,
    697 F.3d 184 (2d Cir. 2012) ........................................................................ 19

*Brinton v. Dep't of State*,
    636 F.2d 600 (D.C. Cir. 1980) ............................................................. 13, 14

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) .............................................. 6, 10, 11, 15

*Ctr. For Nat'l Security Studies v. Dep't of Justice*,
    331 F.3d 918 (D.C. Cir. 2003) ............................................................. 25, 26

*Doe v. Exxon Mobil Corp.*,
    654 F.3d 11 (D.C. Cir. 2011) ...................................................................... 23

*Edwards v. Carter*,
    580 F.2d 1055 (D.C. Cir. 1978) ................................................................... 6

*EFF v. Dep't of Justice*,
    Civ. No. 11-00939 (D.D.C.) ........................................................................ 21

*Freedman v. America Online, Inc.*,
    325 F. Supp. 2d 638 (E.D. Va. 2004) ......................................................... 8

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ....................................................................................... 9

\* Authorities upon which we chiefly rely are marked with asterisks.

*Hormel v. Helvering,*
    312 U.S. 552 (1941) ................................................................ 21

*In re Lindsey,*
    158 F.3d 1263 (D.C. Cir. 1998) ...................................... 23, 28

*In re Sealed Case,*
    877 F.2d 976 (D.C. Cir. 1989) ............................................ 22

*Johnson v. Exec. Office for United States Attorneys,*
    310 F.3d 771 (D.C. Cir. 2002) ............................................ 29

*Jones v. FBI,*
    41 F.3d 238 (6th Cir. 1994) ................................................ 26

*King v. Dep't of Justice,*
    830 F.2d 210 (D.C. Cir. 1987) ............................................ 24

*Larson v. Dep't of State,*
    565 F.3d 857 (D.C. Cir. 2009) ............................................ 25

*Lebron v. Rumsfeld,*
    764 F. Supp. 2d 787 (D. S.C. 2011) .................................... 10

*Loving v. Dep't of Defense,*
    550 F.3d 32 (D.C. Cir. 2008) .............................................. 29

*Mead Data Cent., Inc. v. Dep't of the Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) ............................................ 23

*Murphy v. Dep't of the Army,*
    613 F.2d 1151 (D.C. Cir. 1979) ...................................... 13, 14

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) ............................................................ 3

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ...................................................... 5, 18

*Oglesby v. Dep't of the Army,*
    79 F.3d 1172 (D.C. Cir. 1996) ............................................ 24

*Ray v. Turner*,
   587 F.2d 1187 (D.C. Cir. 1978) ................................................................. 30

*Roosevelt v. E.I. Du Pont de Nemours & Co.*,
   958 F.2d 416 (D.C. Cir. 1992) .................................................................. 22

*Sams v. Yahoo! Inc.*,
   2013 U.S. App. LEXIS 7464 (9th Cir. Apr. 15, 2013) ................................. 7

*\*Schlefer v. United States*,
   702 F.2d 233 (D.C. Cir. 1983) .................................................. 11, 12, 17, 18

*Singleton v. Wulff*,
   428 U.S. 106 (1976) ................................................................... 21, 22, 23

*\*Tax Analysts v. IRS*,
   117 F.3d 607 (D.C. Cir. 1997) ............................................. 6, 7, 12, 13, 20

*Taxation With Representation Fund v. IRS*,
   646 F.2d 666 (D.C. Cir. 1981) ............................................................ 11, 15

*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973) ................................................................. 26

*Vietnam Veterans of America v. Dep't of the Navy*,
   876 F.2d 164, 165 (D.C. Cir. 1989) .......................................................... 12

*Wolfe v. Dep't of Health & Human Serv.*,
   839 F.2d 768, 775 n. 8 (D.C. Cir. 1988) ......................................... 17, 28, 29

## Federal Statutes

18 U.S.C. § 2707 ................................................................................................. 8

5 U.S.C. § 552 ................................................. 1, 3, 5, 10, 11, 12, 13, 18, 23, 24, 30

5 U.S.C. § 552(a)(2)(B) ......................................................................................... 5

5 U.S.C. § 552(b)(1) ........................................................................ 2, 23, 24, 25

5 U.S.C. § 552(b)(5) ................................................................................ 1, 3, 15, 18

## Legislative Materials

S. Rep. 89-813, 89th Cong., 1st Sess. (1965) ............................................................ 5

## Other Authorities

David Barron, Dep't of Justice, *Memorandum for Attorneys of the Office, Re: Best Practices for OLC Legal Advice and Written Opinions* (July 16, 2010) ...................................................................... 14, 15, 16, 17

Kenneth C. Davis, *The Information Act: A Preliminary Analysis*, 34 U. Chi. L. Rev. 761 (1967) ........................................................ 5

Dep't of Justice, OIG, *A Review of the Federal Bureau of Investigation's Use of Exigent Letters and Other Informal Requests for Telephone Records* (2010) ........................................................................ 20

*Developments in the Law – Presidential Authority*, 125 Harv. L. Rev. 2090 (2012) ................................................... 7

Randolph D. Moss, *Executive Branch Legal Interpretation: A Perspective from the Office of Legal Counsel*, 52 Admin. L. Rev. 1303 (2000) ...................... 6

Daniel L. Pines, *Are Even Torturers Immune from Suit? How Attorney General Opinions Shield Government Employees from Civil Litigation and Criminal Prosecution*, 43 Wake Forest L. Rev. 93 (2008) .......................................... 9

## GLOSSARY

DOJ          Department of Justice

EFF          Electronic Frontier Foundation

FBI          Federal Bureau of Investigation

FOIA         Freedom of Information Act

OIG          Office of Inspector General

OLC          Office of Legal Counsel

## SUMMARY OF ARGUMENT

A.     This Court has long held that agency "working law" may not properly be withheld under Exemption 5 of the Freedom of Information Act.  The Office of Legal Counsel ("OLC") Opinion at issue here clearly satisfies the criteria the Court has identified in its "working law" precedents: it is a legal interpretation of federal statutes that determines the substantive rights and liabilities of a wide range of parties (telecommunication companies, their subscribers, the FBI, and other federal agencies).

Particularly in light of the unique role OLC plays in the executive branch, there can be no reasonable dispute that the Opinion at issue here is an authoritative, binding statement of the law that the FBI and other federal agencies cannot disregard.  As such, it is in no way analogous to the situations the Department of Justice ("DOJ") points to, in which the Court found that non-binding "advice" does not constitute "working law."  This conclusion is bolstered by the fact that agency officials acting in conformance with an OLC Opinion enjoy immunity from legal liability that might otherwise attach.

B.     Exemption 5 is inapplicable for another reason: the agency expressly "adopted" the Opinion as evidenced by its public reference to it as legal authority supporting FBI investigative techniques that had been criticized by the agency's own Inspector General.  DOJ may not simultaneously wrap itself in the legal and

1

political protection the Opinion provides while shielding the Opinion's actual content from public scrutiny.

C.     As demonstrated in our opening brief, the attorney-client privilege does not protect the OLC Opinion from disclosure. Contrary to DOJ's suggestion, the district court's failure to address the issue does not preclude this Court from considering it on appeal. The merits were fully argued below, and DOJ placed evidence in the record seeking to support its invocation of the privilege. As such, the Court should exercise its discretion to decide the issue.

D.     DOJ's vague and incomplete declarations were insufficient to justify its withholding of the OLC Opinion under Exemption 1. While some portions might properly be classified to protect legitimate national security interests, the agency failed to demonstrate that the legal analysis contained in the document was subject to withholding. The district court erred in ruling for DOJ in light of its failure to provide basic, necessary information about the withheld material.

E.     Finally, the district court's segregability analysis was insufficient, given that the Opinion contains unclassified, factual information, the withholding of which could only be appropriate under the attorney-client privilege. Because the lower court failed to rule on those privilege claims, there was simply no basis to conclude that such information could not be segregated for release.

## ARGUMENT

I. **THE OLC OPINION CONSTITUTES THE AGENCY'S "WORKING LAW" AND THEREFORE CANNOT BE WITHHELD UNDER EXEMPTION 5**

The OLC Opinion at issue in this case — an authoritative, final, and binding interpretation of federal law; an interpretation printed on bond paper and signed by a government attorney speaking, by delegation, as the voice of the Attorney General of the United States; an interpretation that is indexed and referred to as precedent in future cases; and an interpretation that shapes the substantive rights of a wide swath of the public — clearly constitutes the "working law" of the DOJ and, as such, may not be withheld under Exemption 5 of FOIA. Appellee Br. at 4-6. DOJ seeks to evade the longstanding rule that agency "working law" must be disclosed by transforming the narrow deliberative process privilege into a broad shield against disclosure. Here, if the fundamental principles animating FOIA — ensuring "an informed citizenry, vital to the functioning of a democratic society" and holding "the governors accountable to the governed," *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) — is to have meaningful effect, DOJ's position cannot be sustained.

A.    **As a Binding Legal Interpretation that Shapes the Rights of the Public, the OLC Opinion Constitutes the Agency's "Working Law" and Must Be Disclosed**

In its opening brief, EFF demonstrated that the OLC Opinion constitutes the "working law" of the agency. Appellant Br. at 19-34. DOJ concedes, as it must, that an agency's "working law" — that is, "the policies or rules, and *the interpretations thereof*, that either create or determine the extent of the substantive rights and liabilities of a person" — cannot be withheld under the deliberative process privilege. Appellee Br. at 21 (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1141 (D.C. Cir. 1983)) (emphasis added). The OLC Opinion indisputably contains "an interpretation" (*i.e.*, legal analysis) of "a rule" (*i.e.*, federal statutory restrictions on disclosure of communication records) that "determine[s] the extent of the substantive rights and liabilities" of those governed by federal law (*i.e.*, telecommunication companies and their subscribers, the FBI, and other federal agencies).

Unable to dispute that the OLC Opinion readily fits within the definition of "working law" employed by this Circuit, DOJ instead proposes to unduly limit the types of legal interpretations to which the definition applies. The agency mistakenly asserts that the term applies *only* to those interpretations that either "are binding on the public," "govern the adjudication of individual rights," or "require particular conduct" from a member of the public. Appellee Br. 21-22. While DOJ

4

is correct that those types of interpretations constitute "working law," the scope of the concept is not nearly so narrow as the agency suggests: the "working law" analysis is applicable to *all* authoritative, binding, and final interpretations of law adopted by an agency. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975); *see also* 5 U.S.C. § 552(a)(2)(B); S. Rep. 89-813, 89th Cong., 1st Sess., 6 (1965). The OLC Opinion is clearly such a binding and final interpretation and, as such, is improperly withheld.

Nothing in statute or precedent limits, as DOJ proposes, the concept of "working law" to agency interpretations that directly regulate the public. In *Sears*, the Supreme Court held that FOIA, "properly construed, calls for 'disclosure of *all* 'opinions and interpretations' which embody the agency's effective law and policy[.]'" *Sears*, 421 U.S. at 153 (quoting Kenneth C. Davis, *The Information Act: A Preliminary Analysis*, 34 U. Chi. L. Rev. 761 (1967)) (emphasis added). The Court placed no limitation on the *type* of interpretations that must be made public; rather, *all* interpretations adopted and followed by the agency must be disclosed. *See also* Davis, *The Information Act*, at 778 (interpreting FOIA to require "all 'interpretations' by [the Attorney General and his staff to] be available for public inspection" including any interpretation where "law is applied to particular facts").

Because the OLC Opinion is binding, it necessarily "embod[ies] the agency's effective law." *Sears*, 421 U.S. at 153. DOJ concedes that Executive

agencies are obligated by "custom and practice" to conform their conduct to the "authoritative[]" legal interpretations contained in an OLC opinion. Appellee Br. 25. But the agency then asserts, because no statute mandates compliance with OLC's legal determinations, the Opinion cannot constitute the agency's working law. *Id*. at 25-6. DOJ is mistaken. This Court has never required "authoritative" legal interpretations to be binding at all — let alone binding by statute — to qualify as an agency's "law." In *Tax Analysts*, the records were "nominally non-binding," yet were still found to constitute "working law" because they represented the "considered statements of the agency's legal position." 117 F.3d 607, 617 (D.C. Cir. 1997). In *Coastal States*, while the legal interpretations were not "binding on the audit staff," in practice, the "advice was regularly and consistently followed" and, thus, could not be withheld. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 859-60 (D.C. Cir. 1980).

Even in the absence of the kind of statutory requirement to which DOJ alludes, this Court has noted there is "considerable authority that [an opinion of the Attorney General] is binding on an executive official who requests the opinion on a matter of law." *Edwards v. Carter*, 580 F.2d 1055, 1101 n. 42 (D.C. Cir. 1978); *see also* Randolph D. Moss, *Executive Branch Legal Interpretation: A Perspective from the Office of Legal Counsel*, 52 Admin. L. Rev. 1303, 1305 (2000) (OLC interpretations "are typically treated as conclusive and binding within the executive

branch."); *Developments in the Law – Presidential Authority*, 125 Harv. L. Rev. 2090, 2092-93 (2012) (OLC produces "written opinions that become binding on the executive branch until and unless overruled by the President or the Attorney General."). DOJ offers no reason to treat the OLC Opinion as anything other than what it is: the final, "considered statement[] of the agency's legal position." *Tax Analysts*, 117 F.3d at 617.

Even accepting DOJ's proposed, narrowed definition of "working law," it is apparent that the OLC Opinion directly affects the rights of the public. The agency asserts that the Opinion only addresses the "proper construction of the governing statute" and that neither "[telecommunication] companies nor their customers are regulated" by it.[1]  Appellee Br. 27. But even if companies and their customers are not regulated *directly* by the Opinion, it is indisputable that the OLC's legal interpretation has significant effects on their rights.

The OLC Opinion provides the FBI with the legal basis to employ an alternate means of obtaining communication records from service providers (in

---

[1] Contrary to DOJ's assertion, the Stored Communications Act, the statutory authority interpreted by OLC, "regulat[es] the relationship between government investigators and service providers in possession of users' private information." *Sams v. Yahoo! Inc.*, 2013 U.S. App. LEXIS 7464, *8 (9th Cir. Apr. 15, 2013) (citations omitted). The statute "protects the privacy of electronic communications" by "placing limits on the government's ability" to compel disclosure of customer records and restricts "the ability of network service providers to voluntarily disclose information about their customers" to the government. *Id*. at *9.

addition to the Bureau's ability to obtain records with valid legal process or during an emergency — avenues for disclosure that are apparent on the face of the statute). By providing *another* vehicle for access (and one not apparent on the statute's face), the OLC's legal interpretation expands government access to private communications records, and thereby contracts the statutory privacy rights of the public.   It is thus beyond question that the OLC Opinion's binding construction affects the "substantive rights and responsibilities" of the public in a number of ways: some customer's communication records may be accessed; some customer's records may be excluded; and telecommunication carriers may comply with governmental requests pursuant to the OLC's interpretation.

The OLC Opinion has particular importance with respect to the "rights and liabilities" of telecommunication companies. The Stored Communications Act provides that a "good faith reliance on" a "statutory authorization" is a defense against suit for wrongful disclosure of customer records. *See* 18 U.S.C. § 2707(a), (e)(1); *see also*, *Freedman v. America Online, Inc*., 325 F.Supp.2d 638, 648 (E.D. Va. 2004) (finding good faith reliance under 18 U.S.C. § 2707(e)).   Short of a judicial determination, an authoritative construction of a statute by the Attorney General constitutes the most persuasive authority on which a telecommunication provider could base such a "good faith" reliance.   Given the controversial (and perhaps legally tenuous) nature of the actions described in the OIG reports, the

OLC Opinion sanctioning that conduct allowed providers to rest assured that their actions were authorized by statute, as formally and definitively interpreted by the Attorney General.

Finally, DOJ glosses over the fact that OLC opinions shape substantive rights by providing shields of legal immunity. Appellee Br. 28 ("[T]he possible effect of the OLC Opinion on government officers . . . has no bearing on whether the OLC Opinion affects the substantive rights" of the public.). Beyond its conclusory rebuttal, the agency does nothing to dispute the salient point: if a government officer acts in good faith reliance on a legal interpretation rendered by OLC, the official enjoys a powerful, if not impenetrable, shield of immunity from civil and criminal liability. *See*, *generally*, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also*, Daniel L. Pines, *Are Even Torturers Immune from Suit? How Attorney General Opinions Shield Government Employees from Civil Litigation and Criminal Prosecution*, 43 Wake Forest L. Rev. 93, 122-31 (2008) (analyzing effect of OLC opinions under *Harlow*). Even under the formulation of "working law" DOJ embraces, a party losing a civil dispute with an agency (or agency official) because the official acted in reliance on the advice of an otherwise-secret OLC opinion presents the archetypal justification for disclosure of "working law." *See* Appellee Br. 24 (noting disclosure warranted in order to "prevent a citizen from losing a controversy with an agency because of some obscure and hidden

9

order or opinion").[2] For these reasons, the OLC Opinion unquestionably constitutes the agency's "working law" and cannot be withheld under FOIA.

**B.     This Circuit's Precedent Compels Disclosure of the OLC Opinion; The Cases DOJ Cites are Inapposite Because the Interpretations Were Merely Advisory**

This Court has repeatedly rejected agency attempts to shield "working law" from public disclosure. *See* Appellant Br. 24-29. DOJ attempts to distinguish this Court's precedent on the ground that previous cases fit only within the narrow conception of "working law" DOJ seeks to advance here. Appellee Br. 28 (suggesting earlier cases stand only for the proposition that "rule of decision in particular matters" must be disclosed). As demonstrated above, however, DOJ's cramped conception does not find support in either the Supreme Court's or this Circuit's "working law" cases.

DOJ highlights and attempts to distinguish *Coastal States*, where the Court held that "an agency will not be permitted to develop a body of 'secret law,' *used by it in the discharge of its regulatory duties and in its dealings with the public*, but hidden behind a veil of privilege." Appellee Br. 29 (citing *Coastal States*, 617 F.2d

---

[2] Such a scenario is not merely hypothetical. For example, in *Lebron v. Rumsfeld*, 764 F. Supp. 2d 787, 803-04 (D. S.C. 2011), the district court found government officials accused of approving and using harsh interrogation methods on a citizen were entitled to qualified immunity, based in part on OLC's "lengthy memoranda . . . concluding that various coercive interrogation techniques . . . were lawful." *Id.* at 803. The court noted that, at the time the alleged conduct occurred, "[n]o court had specifically and definitively addressed" the issue, and OLC "had officially sanctioned the use of the techniques in question." *Id.*

at 867 (emphasis added in Appellee Br.)). But this is a distinction without a difference. Here, the OLC Opinion was used by the FBI to "ensure that any information-gathering procedures," undertaken in the discharge of its statutory and regulatory duties (and, by necessity, in its dealings with the public), complied with the law. Declaration of Paul P. Colborn ("Colborn Decl.") ¶ 13 [JA 23]; *supra* at 7-9 (discussing Opinion's effect on the public). Like the records in *Coastal States*, the withheld Opinion thus constitutes the agency's "working law."

DOJ attempts to distinguish *Taxation With Representation Fund v. IRS*, 646 F.2d 666 (D.C. Cir. 1981) ("*TWRF*") on the ground that the records there "clearly pertain[ed] to the law that will be applied by the agency henceforth" and contained "explanations of the agency's 'final' legal position on the issue." Appellee Br. 31 (citing *TWRF*, 646 F.2d at 684). Again, this is not a distinguishing characteristic. As in *TWRF*, the OLC Opinion constitutes the "law that will be applied by the agency henceforth": the executive branch's final and authoritative construction of federal statutes, representing the "agency's 'final' legal position on the issue." *Id*. Again, like the records in *TWRF*, the OLC Opinion is "working law" that cannot be withheld under FOIA.

DOJ also attempts to distinguish *Schlefer v. United States*, 702 F.2d 233 (D.C. Cir. 1983), on the grounds that the "FBI does not need clearance from OLC" before implementing particular investigative techniques. Appellee Br. 29. But the

Bureau *does* need to ensure its actions are in compliance with federal law, and the OLC Opinion provides that assurance. As noted in *Vietnam Veterans of America v. Dep't of the Navy*, 876 F.2d 164, 165 (D.C. Cir. 1989), the records in *Schlefer* constituted working law because, there, the agency "would not clear actions inconsistent" with the legal interpretations espoused in those records. So too here: even if the FBI does not need clearance from OLC prior to taking action, the fact that the Bureau will "not clear actions inconsistent" with the legal interpretations of OLC renders the Opinion "working law."

DOJ hardly attempts to distinguish this Court's most relevant authority, *Tax Analysts*, 117 F.3d 607. There, the Court ordered disclosure of records representing the "considered statements of the agency's legal position," holding that the "government's opinion" about "what the law is" and "what is not the law" represented a final "statement of government policy." *Id*. at 617.  The only distinction offered by DOJ is that the disputed records were used in the IRS's "dealings with the taxpaying public." Appellee Br. 30 (citing *Tax Analysts*, 117 F.3d at 618). This point is irrelevant because, as explained, the types of binding interpretations that must be disclosed under FOIA are not limited to those which directly regulate a member of the public. *See supra* at 4-5. And, in any event, the OLC Opinion *does* govern the agency's dealings with the public: the Opinion governs interactions between the FBI and telecommunications providers and, by

12

extension, those providers' customers. *See supra* at 7-9. Thus, the OLC Opinion, like the records in *Tax Analysts*, represents "the considered view" of the agency's legal position and, as such, "the public can only be enlightened by knowing" what the executive branch "believes the law to be." *Id*. at 618.

DOJ relies primarily on two cases it believes support the proposition that binding, authoritative legal interpretations may be withheld under FOIA. *See* Appellee Br. 31-32. Neither case goes nearly so far as the agency would like. First, in *Murphy v. Dep't of the Army*, 613 F.2d 1151 (D.C. Cir. 1979), the "principle issue" was not whether binding legal interpretations could be withheld under FOIA, but whether the deliberative process privilege had been waived by disclosure to a member of Congress. *Id*. at 1152, 1153. In a footnote, the Court dismissed the requester's claims that the records — containing legal "advice and recommendations" from counsel to the Secretary of the Army —were final agency opinions because the argument was based "on the erroneous premise that the Army's General Counsel's Office has authority to make final decisions with respect to legal matters." *Id*. at 1154 n.9. In stark contrast, here, OLC exercises that precise duty: making final, authoritative decisions with respect to the interpretation of statutes.

The other case on which DOJ primarily relies, *Brinton v. Dep't of State*, 636 F.2d 600 (D.C. Cir. 1980), is similarly off point. There, the Court permitted the

13

withholding of legal advice provided by the Office of Legal Advisor to the Secretary of State. *Id*. at 605. As in *Murphy*, the withholding was premised on the fact that the Legal Advisor's advice was exactly that – *advice*. *Id*. at 604-05. The Legal Advisor's analysis and recommendations could not and did not bind the Secretary. *Id*. at 604 (noting "the requested documents contain opinion" and were merely "advisory"). Under the facts of this case, an analogous situation might arise if the record was generated by the FBI's general counsel to advise the Bureau's director. But such material is not at issue here; EFF seeks only the authoritative and binding legal interpretation that OLC is uniquely empowered to render.

As EFF has emphasized throughout this litigation, "OLC's central function is to provide, pursuant to the Attorney General's delegation, controlling legal advice to Executive Branch officials[.]" Appellant Br. 4 (quoting David Barron, Dep't of Justice, *Memorandum for Attorneys of the Office, Re: Best Practices for OLC Legal Advice and Written Opinions* (July 16, 2010) ("OLC Best Practices") at 1 [JA 54]); *see also* Brief of *Amici Curiae* at 8-14. Given OLC's distinctive role within the executive branch, the authoritative and binding interpretations of federal law it issues can in no way be analogized, as DOJ suggests, to the kinds of non-binding "advisory" materials generated by agency counsel in *Murphy* and *Brinton*.

**C.    Because the Opinion is Neither Predecisional Nor Deliberative, Its Disclosure Will Not Harm Agency Decisionmaking Processes**

The Opinion constitutes the working law of the DOJ and, as EFF's opening brief showed, it is neither "predecisional" nor "deliberative" within the meaning of Exemption 5. *See* Appellant Br. 29-34. Moreover, the disclosure of the OLC Opinion will in no way impair the decisionmaking process of the agency.

EFF's brief demonstrated that the OLC Opinion is not "predecisional." *Id*. at 29-31. Because of the "nature of the decisionmaking authority vested" in the OLC, the agency was bound to follow the legal interpretations contained within the Opinion. *TWRF*, 646 F.2d at 679. The Opinion, therefore, is not antecedent to the decision: it represents the decision itself.

EFF also showed the Opinion is not "deliberative," Appellant Br. 32-34, and DOJ makes no argument in rebuttal. *See* Appellee Br. 14-16. And, indeed, as an objective, neutral analysis of statutory law, itself the product of a "careful and deliberate" process, OLC Best Practices at 3 [JA 56], the agency cannot show that the Opinion is "deliberative." The Opinion does not represent the "give-and-take" of an ongoing discussion on the appropriate interpretation of the relevant statute. *Coastal States*, 617 F.2d at 867. Instead, it is the "final word on the controlling law." OLC Best Practices at 1 [JA 54].

Because the Opinion is neither "predecisional" nor "deliberative," DOJ instead suggests, in general terms, that disclosure of the Opinion could harm the "values" protected by the deliberative process privilege. Appellee Br. 17. Thus, the agency suggests disclosure could "infringe upon essential communications" within the agency. *Id*. But EFF does not seek any informal communications between OLC, FBI, or any other agency. Colborn Decl. ¶ 9 [JA 21-22] (discussing inter- and intra-agency communications). Nor does EFF seek the drafts, internal communications, or consultations inevitably generated within OLC while drafting the Opinion. *See* OLC Best Practices at 2-5 [JA 55-58]. Disclosure of a final, binding OLC opinion will in no way affect the generative process in which the Opinion, itself, was developed.

DOJ next suggests disclosure of the OLC Opinion could inhibit future agency requests for OLC guidance because "there is good reason to believe the FBI might not have consulted OLC at all if it knew that the resulting opinion would be subject to mandatory disclosure." Appellee Br. 17-18. DOJ's suggestion paints an unsettling portrait of the Bureau's desire to act within the law and its statutory authority. As discussed above, *supra* at 5-9, an OLC opinion on a legal question — in particular a controversial or novel question — assures an agency official that he or she is acting pursuant to the executive branch's definitive assessment of what the law allows. Defendant offers no "good reason" to assume

that agency officials will stop seeking OLC's definitive legal interpretations —
and, thus, risk acting illegally — simply because the interpretation may become
public.

The agency complains that EFF "makes no attempt to explain how OLC
could reasonably be expected to continue to provide candid and balanced
assessments if" the OLC Opinion were subject to disclosure. Appellee Br. 19. In
fact, it is DOJ that fails to explain its position: because OLC strives to provide
"candid, independent, and principled advice," OLC Best Practices at 1 [JA 54], it is
unclear how disclosure would affect the provision of that unbiased advice. OLC
can continue to provide its legal interpretations much the way the courts provide
their "candid, independent, and principled" interpretations of the law – openly and
transparently.[3]

Here, as in *Schlefer*, disclosure of the OLC Opinion, which "authoritatively
state[s] an agency's position," will "neither inhibit the free exchange of views
within the agency nor confuse the public, because the agency's own purpose in

---

[3] Indeed, this Court has looked to the process of judicial deliberation to guide its
analysis of deliberative process claims. *See, e.g.*, *Wolfe v. Dep't of Health &
Human Serv.*, 839 F.2d 768, 775 n.8 (D.C. Cir. 1988) (citing cases). The issuance
of a final opinion by OLC closely resembles the resolution of an issue before a
court, particularly when OLC opinion settles disputes between agencies. *See* Brief
of *Amici Curiae* at 9 (noting Attorney General charged with resolving legal
disputes between agencies), 12 (noting OLC's "quasi-judicial" function).

preparing such documents is to obviate the need for further intra-agency deliberation on the matter addressed." *Schlefer*, 702 F.2d at 237.

For all the reasons described above, the Opinion is a binding interpretation of the agency's law and, as such, must be disclosed. FOIA, "properly construed, calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy." *Sears*, 421 U.S. at 153. DOJ has offered no rationale that would justify a different conclusion.

## II.   THE OLC OPINION HAS BEEN EXPRESSLY ADOPTED BY THE AGENCY

Alternatively, the OLC Opinion cannot be withheld under Exemption 5 for another reason: it has been "adopted" by the agency. That DOJ has attempted to conceal its adoption behind redaction and closed-door briefings is of no import. Agency adoption need not be public or prominent, it need only be "express." *Sears*, 421 U.S. at 161. Because the agency relied on the Opinion to conform its investigative practices to OLC's interpretation of the law, and because DOJ has publicly and approvingly referenced the Opinion, it has been "expressly" adopted in a manner sufficient to negate the privilege. *See* Appellant Br. 34-37.

DOJ misconstrues EFF's position with respect to adoption by attempting to conflate the agency's public reference to the OLC Opinion with the agency's actual act of adoption. Appellee Br. 36-37. It is not EFF's position that, by referencing the OLC Opinion in the OIG Report or by discussing the OLC Opinion

with elected officials behind closed doors, the agency, *through those acts*, adopted the OLC Opinion. Rather, EFF submits that those acts are *indicia* of adoption. Indeed, had the Opinion *not* been adopted by the agency, there would be no need for the OIG to urge Congressional review of the Opinion's legal interpretation. *See* Appellant Br. 9-10. Nor would the FBI's general counsel need to "discuss the opinion with elected officials" in a "nonpublic setting." Appellee Br. 37. Were the Opinion not adopted, the FBI could simply — and publicly — disavow it: there would be no need for explanation of OLC's legal interpretation to Congress.

In *Brennan Center for Justice v. Dep't of Justice*, 697 F.3d 184, 205 (2d Cir. 2012), the Second Circuit noted that "[a]ny agency faces a political or public relations calculation in deciding whether or not to reference what might otherwise be a protected document in explaining the course of action it has decided to take." However, "where it determines there is an advantage to doing so by referencing a protected document as authoritative, it cannot then shield the authority upon which it relies from disclosure."  That is precisely the choice the FBI made here.  When its actions were criticized by the OIG in its draft report, the Bureau sought OLC's imprimatur prior to the public release of OIG's findings.  The resulting OLC Opinion agreed with and supported the FBI's position that, "as a matter of law," the FBI could obtain call records "without any legal process or qualifying emergency through voluntary production by the communications service

providers." Dep't of Justice, OIG, *A Review of the Federal Bureau of Investigation's Use of Exigent Letters and Other Informal Requests for Telephone Records* (2010) ("Exigent Letter Report") at 264-65 [JA 48-49]. The agency could have chosen "not to reference what might otherwise be a protected document in explaining" the actions that OIG initially found to be legally questionable, but the agency saw fit to note publicly that OLC had endorsed the Bureau's novel legal interpretation. *See id*. These approving, public references demonstrate the agency adopted the Opinion and, therefore, it must be disclosed.

## III. THE ATTORNEY-CLIENT PRIVILEGE DOES NOT SHIELD THE OLC OPINION FROM DISCLOSURE, AND RESOLUTION OF THE ISSUE IS APPROPRIATE ON APPEAL

As EFF explained in its opening brief, because the OLC Opinion constitutes the agency's working law, it cannot be withheld under the attorney-client privilege. *See Tax Analysts*, 117 F.3d at 619; Appellant Br. 38-40. Alternatively, even if the attorney-client privilege could apply to a document like the OLC Opinion, whatever privilege might have attached has been waived by the Opinion's wide distribution throughout two branches of government and, possibly, outside of government. *See* Appellant Br. 40-44. Perhaps recognizing the merits of these arguments, DOJ fails to address them in its brief (nor does the agency advance the arguments it raised on these points in the district court). Instead, DOJ seeks to deflect the issue by urging the Court to remand for consideration of the question in

the first instance by the district court. Appellee Br. 43-44. Contrary to DOJ's suggestion, the application of the attorney-client privilege is appropriately resolved by this Court.

It is squarely within the Court's discretion to address the applicability of the privilege on appeal. *Singleton v. Wulff*, 428 U.S. 106, 121 (1976) (Resolution of matters for first time on appeal is "left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."). Although the general rule is to avoid initial appellate resolution of issues, the rule primarily protects parties' interests in having "the opportunity to offer all the evidence they believe relevant to the issues" and in not being "surprised on appeal by final decision" without an opportunity to introduce arguments. *Id.* (citing *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)). Such a concern should not preclude determination of the issue here: DOJ submitted evidence and fully briefed the question in support of its summary judgment motion before the district court. *See* Colborn Decl. ¶¶ 5, 14 [JA 20, 23-24]; *see also* Def's Mot. for Summ. J. at 16-17 (ECF No. 11), Def's Opp. & Rep. in Supp. of Summ. J. at 17-22 (ECF No. 17), *EFF v. Dep't of Justice*, Civ. No. 11-939 (D.D.C.) (discussing attorney-client privilege). Although the agency has chosen not to reprise its argument on appeal, it has had a full and fair opportunity to present argument and evidence. The issue thus may be appropriately resolved on the record presently before the Court. *See Roosevelt v. E.I. Du Pont de*

*Nemours & Co.*, 958 F.2d 416, 419 & n.5 (D.C. Cir. 1992) (initial review on appeal appropriate where "resolution of the issue [does] not depend on any additional facts" not before the district court).

Moreover, there are instances where appellate resolution of an issue is particularly appropriate, including "where the proper resolution is beyond any doubt." *Singleton*, 428 U.S. at 120. There is no doubt that, even under an extraordinarily broad conception of the attorney-client privilege, it cannot extend to cover the OLC Opinion here. DOJ suggests that an allegedly privileged document may be shared throughout an agency, with other agencies within the Executive Branch, with a separate branch of government, and, perhaps, even shared outside of the government, all while still maintaining the privilege. *See* Appellant Br. 40-44 (discussing privilege claims raised in district court). In reality, the privilege must be "jealously guarded" and can be waived by a record's distribution outside the attorney-client relationship. *See In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989). Indeed, given that the privilege can be waived through even *inadvertent* disclosures, *id.*, no legitimate conception of the privilege tolerates the breadth of *intentional* disclosures that occurred here. It is therefore

"beyond any doubt" that the attorney-client privilege does not apply to the OLC Opinion. *Singleton*, 428 U.S. at 120.[4]

Thus, initial appellate resolution of the issue is appropriate and warranted: the Court should properly conclude that the attorney-client privilege does not shield the OLC Opinion from disclosure.

## IV.  DOJ FAILED TO PROVIDE THE TYPE OF SPECIFICITY REQUIRED TO WARRANT SUMMARY JUDGMENT UNDER EXEMPTION 1

A declaration that fails to describe the quantity, scope, and distribution of classified information contained in a withheld record does not provide adequate grounds for summary judgment, even under the relatively deferential standard of review under Exemption 1 of FOIA. Appellant Br. 44-49; *see also Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). In response, DOJ concedes that it was possible to provide "additional detail" about its withholdings without "compromising the classified information." Appellee Br. 47. Nevertheless, the agency argues it chose not to because doing so would only "give

---

[4] Appellate resolution of issues in the first instance is also appropriate where there is "uncertainty in the state of the law" or where the issue involves a "novel, important, and recurring question of federal law." *Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 40 (D.C. Cir. 2011) (internal quotations and citations omitted). Application of the government attorney-client privilege raises relatively novel legal questions, and uncertainty exists concerning its scope and proper invocation. *See, e.g.*, *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) (discussing cases involving government invocation of the privilege). This novelty, uncertainty, and importance also counsel in favor of appellate resolution of the issue.

the district court sufficient information to second-guess the Executive Branch's judgment[.]" Appellee Br. 47. Such a statement represents a profound misunderstanding of the executive branch's responsibilities in Exemption 1 cases, and in FOIA cases generally.[5]

In all FOIA cases, regardless of the exemption claimed, the agency's obligation is to provide "as much information as possible without thwarting the [claimed] exemption's purpose." *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987). Further, the agency must provide the requester with "a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Id*. Contrary to DOJ's suggestion, whether or not the district court "second-guess[es]" the executive's determinations is a matter for the *district court* to consider. It is not a consideration relevant to the adequacy of the agency's affidavits.

Under this Court's clearly established standards, *see Oglesby v. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996), DOJ cannot meet its burden to justify the withholding of ten pages of an eleven-page legal analysis by vaguely asserting that "portions" contain classified information. If anything, DOJ's brief demonstrates the need for greater specificity concerning the scope of its Exemption 1 claims. The agency has withheld citations to federal statutes

---

[5] It bears emphasizing, again, that EFF concedes that *some* legitimately classified information may exist within the OLC Opinion. *See* Appellant Br. 44.

contained within the OLC Opinion — apparently claiming the citations, themselves, are classified. *See* Appellee Br. 6 (noting OIG report contained redactions for "classified portions" and describing one of those redactions as "[a redacted authority]"). It is precisely this type of withholding — the concealment of the statutory basis for the government's purported legal authority — that cannot be sustained without further specificity and explanation.

DOJ argues it is not obligated to provide more information about the distribution of classified information in the OLC Opinion because of the deference owed the executive in Exemption 1 cases. *See* Appellee Br. 46-47. Whatever deference is owed stems from the differing institutional competencies of the two branches of government. *Ctr. For Nat'l Security Studies v. Dep't of Justice*, 331 F.3d 918, 926-27 (D.C. Cir. 2003). When presented with adequately justified and specific declarations, judicial deference extends to executive determinations of the potential harm to national security that could result if, for example, a particular intelligence source or relationship were revealed. *See Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009).

But DOJ here makes the novel — and far broader — suggestion that the courts are obligated to defer to the executive's decision to not provide basic, fundamental information about the withheld documents, even where the agency has not even *attempted* to justify its failure to provide such information. Indeed, the

argument DOJ advances here would amount to an abdication of the judiciary's *de novo* review responsibilities — not deference. While the executive may be owed deference in assessing questions of harm to national security, there is no corresponding basis for deferring to the executive on a question of law. *See King*, 830 F.2d at 217-18 (adequacy of *Vaughn* index is question of law). Neither statute, precedent, nor the Constitution requires such an approach here. *See*, *e.g.*, *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 939 (Tatel, J. *dissenting*) (noting that requiring a satisfactory *Vaughn* is "not second-guessing [an agency's] judgment about matters within their expertise").

Finally, the district court's reliance upon DOJ's vague and unspecific declaration was particularly unwarranted here, given the documented and incontrovertible history of illegal (and questionably legal) FBI surveillance practices which gave rise to the OLC Opinion. *See* Appellee Br. 6-10 (discussing OIG investigations); *see also Jones v. FBI*, 41 F.3d 238, 242-43 (6th Cir. 1994) (where evidence of illegal conduct is strong, accepting unspecific affidavits risks "straining public's ability to believe" in the adversarial process). DOJ responds that the OIG investigations merely painted the FBI in an "unflattering light" and, in any event, are "irrelevant" to the question of whether the agency has sustained its burden. Appellee Br. 49-50. This "unflattering light" illuminated flagrant violations of federal law and agency regulations. *See* Appellee Br. 6-10. Where the

disputed records relate to irrefutable evidence of agency misconduct, there is a heightened public interest in disclosure of the records, thus warranting a more searching review of the agency's withholding determinations. *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980). The circumstances of this case require a more exacting review than the one that occurred below.

## V.    THE DISTRICT COURT'S SEGREGABILITY REVIEW FAILED TO ACCOUNT FOR UNCLASSIFIED, FACTUAL INFORMATION THAT WAS REASONABLY SEGREGABLE FROM THE ALLEGEDLY DELIBERATIVE PORTIONS OF THE OLC OPINION

To properly decide whether unclassified, factual information contained within the OLC Opinion was exempt from disclosure, the district court needed at least one of the following: (1) declarations from the agency stating that factual information was "inextricably intertwined" with allegedly deliberative portions; (2) *in camera* review of the document;[6] or (3) a determination that the attorney-client privilege applied to the document in its entirety. *See* Appellant Br. 49-52. None occurred at the district court. Thus, the court erred in upholding DOJ's blanket withholding of the OLC Opinion. This failure alone warrants reversal, and DOJ's arguments to the contrary lack merit.

---

[6] DOJ attempts to re-cast EFF's challenge as one to the district court's discretion for declining to review the records *in camera*. Appellee Br. 42-43. However, *in camera* review was only one alternative available to the court for developing the requisite factual basis to sustain its decision. It was the absence of *any* basis for its decision that was improper, not simply its declination to review the records *in camera*.

The agency incorrectly asserts the record provided an adequate basis for the district court's determination. DOJ suggests a single line in its declaration, stating that information was submitted "for the purpose of obtaining legal advice," demonstrates compliance with its segregability obligations. Appellee Br. 40 (citing Colborn Decl. ¶ 11 [JA 22-23]). But only the attorney-client privilege can protect unclassified, factual information, purely based on the purpose for which it was submitted. *See In re Lindsey*, 158 F.3d at 1267 (attorney-client privilege available for information submitted "for the purpose of securing legal advice"). Because the district court failed to address the privilege's application to the document, DOJ's single sentence does not satisfy its obligation to segregate and release unprivileged information.

DOJ relies primarily on *Wolfe* to support the district court's decision. *Wolfe* is unavailing for two primary reasons. First, the factual information in *Wolfe* was the *only* information in dispute in the case. *Id.* at 771. Thus, the government made clear that the facts, themselves, would reveal agency deliberations, and the Court had an opportunity to review those grounds. *Id.* at 775. In contrast, here, DOJ has provided no description of the factual information that has been withheld, beyond asserting the purpose for which it was allegedly submitted. However, the purpose for which factual information was submitted is irrelevant to the question of the role of the information within the particular document. Only when disclosure of the

factual information, itself, will reveal deliberations (as in *Wolfe*), or when the factual information is so "inextricably intertwined" with deliberative portions, may the information be withheld under the privilege. *See* Appellee Br. 50-51.

Second, even the *Wolfe* Court noted that the "fact/opinion distinction" between privileged and unprivileged information in an otherwise deliberative document  "'offers a quick, clear, and predictable rule of decision,' *for most cases*." *Wolfe*, 839 F.2d at 774 (internal citations omitted) (emphasis added). Without the unusual scenario presented in *Wolfe*, and without a more searching justification for DOJ's failure to segregate and release the information, the district court lacked a sound basis for sustaining DOJ's blanket withholding.

The agency suggests other courts have upheld government segregability determinations based on declarations as vague as the one submitted here. *See* Appellee Br. 41. But in all the cases cited by DOJ, each agency's declaration at least *mentioned* segregability. *See Johnson v. Exec. Office for United States Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002); *Loving v. Dep't of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008); *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 580 (D.C. Cir. 1996). Here, in stark contrast, DOJ's declarations failed to discuss, even in conclusory fashion, the possibility of segregating and releasing non-exempt information.

29

Finally, DOJ suggests (as did the district court) that the burden is on a FOIA plaintiff to demonstrate that a withheld document contains segregable information. *See* Appellee Br. 41 ("Plaintiff provides no reason to believe that the document contains any segregable information[.]"). This position is incorrect: the burden squarely rests with the agency. *Ray v. Turner*, 587 F.2d 1187, 1191 (D.C. Cir. 1978). By failing to satisfy that burden, DOJ was not entitled to summary judgment, and the district court thus erred.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Dated this 20th day of June, 2013.

Respectfully submitted,

  /s/ David L. Sobel
DAVID L. SOBEL
Electronic Frontier Foundation
1818 N Street, N.W., Suite 410
Washington, DC 20036

MARK RUMOLD
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ]  this brief contains [6,999] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[   ]  this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ]  this brief has been prepared in a proportionally spaced typeface using [Microsoft Word for Mac 2011] in [14pt Times New Roman]; or

[   ]  this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Dated: June 20, 2013                    _____/s/ David L. Sobel_____
                                              *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 30th day of May, 2013, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Daniel Tenny
Michael S. Raab
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washinton, DC 20530
(202) 514-1838

*Counsel for Appellee*

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of June, 2013 at Washington, D.C.

   /s/ David L. Sobel       
*Counsel for Appellant*